[Nos. C012228, C012329, C012983. Third Dist. Dec. 28, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
THIEP VAN NGUYEN et al., Defendants and Appellants.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III, IV, V, VI, VII and VIII.

**COUNSEL**

Rodger P. Curnow, Richard L. Rubin and Diane Berley, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Roger E. Venturi and Ward A. Campbell, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SPARKS, Acting P. J.**—Defendants Thiep Van Nguyen, Ahn Van Tran, and Dung Van Nguyen were each sentenced to state prison after suffering criminal convictions for multiple counts of robbery (Pen. Code, § 211 [unless otherwise specified further section references are to the Penal Code]), one count of genital penetration with a foreign object in concert (§§ 264.1, 289), and one count of being accessories to genital penetration

with a foreign object in concert (§ 32), based upon two separate incidents that occurred on December 4, 1990. This appeal followed.[1]

In the published portion of this opinion we consider defendants' contentions that (1) genital penetration with a foreign object cannot be a natural and probable consequence of robbery and the trial court erred in instructing the jury on the liability of an aider and abettor for the natural and probable consequences of the act aided and abetted; and (2) the evidence does not support their convictions for being accessories to genital penetration with a foreign object in concert. In the unpublished portion we address defendants' claims that (1) the evidence does not support the finding that defendant Dung Nguyen was present during the perpetration of the crimes; (2) the evidence does not support the special findings that defendant Dung Nguyen personally used a firearm (§ 12022.5) in the commission of four of the robberies; (3) the trial court failed to state separate reasons for imposing full, separate and consecutive sentences (§ 667.6, subd. (c)), for the sexual offense; (4) the sentences of Thiep Nguyen and Ahn Tran violate the double-the-base-term limitation of section 1170.1, subdivision (g); and (5) the court failed to state appropriate reasons for imposing consecutive sentencing.

We conclude that the evidence does not support defendants' convictions as accessories (§ 32), or the special findings that Dung Nguyen personally used a firearm (§ 12022.5), and will reverse those convictions and findings. These conclusions require modification of defendants' sentences with a net reduction in Dung Nguyen's total unstayed prison term but with no change in the total unstayed prison terms of Thiep Nguyen and Ahn Tran. We reject defendants' other contentions and will affirm the judgments as modified.

## THE CRIMES

Nancy B. is the owner of a tanning salon in Sacramento. In the late afternoon of December 4, 1990, three young Vietnamese men knocked on the door of the salon and sought admittance, saying they wanted massages. Through an opening in the door Nancy told them that she did not provide massages and that at any rate they were too young for her services. After the men left the front door Nancy noticed a number of young men prying open the back door. The door was forced open and eight young men, seven of whom had guns, burst in. The one intruder who did not have a gun appeared to be of mixed ancestry, part Black and part Asian.

---

[1]The defendants filed separate notices of appeal. On July 2, 1992, we granted respondent's motion for consolidation for all further appellate purposes, including decision, except that the cases retain their respective case numbers.

The intruders demanded money. Nancy was threatened, struck with guns, pushed onto floor, and then tied up with a telephone cord. A jacket was placed over her head. Three men held her down, then three other perpetrators exchanged places and held her down. While she was held down someone pulled her pants down, pushed a gun into her vagina, and threatened to fire it if she did not give up her valuables. The gun was kept in her vagina for 10 to 15 minutes. Eventually the intruders removed the gun, put a breath-spray canister into Nancy's vagina, and left. During the incident the intruders had ransacked the business and stolen money and jewelry.

Shortly after the incident at the tanning salon, a group of young Asian men forced their way into a relaxation spa in Sacramento. The modus operandi was similar to that employed in the tanning salon incident. Two men sought admittance purportedly to partake of the services offered and then forced the door open when the proprietor, Chung, C., sought to examine their identification. Up to nine young men then entered, forced the occupants to lie on the floor, bound them with tape, and put covers over their heads. Since the occupants were caught by surprise and their eyes were covered, they did not get a complete view of all of the perpetrators, but they were able to see that at least three of the perpetrators had guns. The perpetrators ransacked the business and stole money, jewelry and other personalty from the occupants. During the incident one occupant, Kyuok W., was fondled and sexually violated with a finger.

At the approximate time of the relaxation spa incident, a neighbor observed a large dark car occupied by several young Asian men stop in front of her house. A small blue Honda occupied by several young Asian men then stopped in front of the dark car. The young men, about nine in all, got out of the cars, talked, and then walked toward the spa. The blue Honda was left on the street overnight and was impounded the following morning. When it was impounded, a gun was discovered on the front floor of the car. The owner of the car testified that he had loaned it to defendant Dung Nguyen and that he had not returned it.

Shortly after the relaxation spa incident, police officers encountered defendants Dung Nguyen and Thiep Nguyen attempting to hitchhike south on Stockton Boulevard, not far from the relaxation spa. Thiep Nguyen was wearing a baseball cap which had been stolen from one of the occupants of the spa and which was identifiable from stains the owner had gotten on the hat while painting. Dung Nguyen was in possession of a key to the blue Honda that was left at the scene of the relaxation spa incident. In addition to large amounts of cash, Thiep and Dung each were in possession of jewelry that had been stolen from occupants of the relaxation spa and Dung had

jewelry that had been stolen from Nancy B. during the tanning salon robbery. Shortly after they were detained, Nancy B. made a field identification of Thiep and Dung as participants in the tanning salon robbery and later identified Thiep and defendant Ahn Tran in a photographic lineup but she could not identify any of the defendants at trial. At trial Kyouk W. identified Thiep Nguyen as one of the participants in the relaxation spa incident. In a photographic lineup Kyouk and another victim from the relaxation spa identified Dung Nguyen as a participant.

Several hours after the incidents police officers conducted a search of the residence of defendant Ahn Tran. The officers recovered a large amount of cash and some jewelry that had been stolen during each of the incidents. Tran was arrested and made a statement, later retracted, in which he admitted being present at each of the incidents and said that he was given cash and jewelry to hold.

Based upon these incidents defendant Thiep Nguyen was found guilty of five counts of robbery (§ 211), in which he was armed with a firearm (§ 12022, subd. (a)); one count of genital penetration by a foreign object in concert (§§ 264.1, 289); and one count of being an accessory to genital penetration with a foreign object in concert (§ 32). Defendant Ahn Tran was found to be guilty of five counts of robbery (§ 211), in which he was armed with a firearm (§ 12022, subd. (a)); one count of genital penetration with a foreign object in concert (§§ 264.1, 289); and one count of being an accessory to genital penetration with a foreign object in concert (§ 32). Defendant Dung Nguyen was found to be guilty of five counts of robbery (§ 211), in which he was armed with a firearm (§ 12022, subd. (a)); one count of genital penetration by a foreign object in concert (§§ 264.1, 289); and one count of being an accessory to genital penetration with a foreign object in concert (§ 32). In the four robbery counts arising out of the incident at the relaxation spa defendant Dung Nguyen was found to have personally used a firearm. (§ 12022.5.) In a bifurcated proceeding defendants Thiep Nguyen and Ahn Tran admitted that their offenses were committed while they were released on bail. (§ 12022.1.) Sentencing of Thiep Nguyen and Ahn Tran included sentencing upon their convictions for the offenses for which they were on bail when these crimes were committed.

DISCUSSION

I

Each of the defendants contends that the trial court erred in instructing the jury on the liability of an aider and abettor with respect to the sexual

offenses.[2] Specifically, they assert that the court erred by instructing pursuant to CALJIC No. 3.02, set out in full in the margin, which concerns the liability of an aider and abettor for the natural and probable consequences of the act originally contemplated. Defendants argue that forcible sexual penetration with a foreign object cannot be considered a reasonably foreseeable or natural and probable consequence of robbery and that the court erred by instructing that it was for the jury to determine whether the charged sexual offenses were natural and probable consequences of the robberies. This erroneous instruction, the argument continues, compels reversal of defendants' convictions for sexual penetration with a foreign object regardless whether the evidence would otherwise support the convictions, because it cannot be determined whether any of the jurors relied upon this theory. (See *People* v. *Green* (1980) 27 Cal.3d 1, 69-70 [164 Cal.Rptr. 1, 609 P.2d 468].)

■ The test for determining whether instructions on a particular theory of guilt are appropriate is whether there is substantial evidence which would support conviction on that theory. *(People* v. *Houts* (1978) 86 Cal.App.3d 1012, 1019 [150 Cal.Rptr. 589].) To determine whether there is substantial evidence to support a conviction we must view the record in a light most favorable to conviction, resolving all conflicts in the evidence and drawing all reasonable inferences in support of conviction. We may conclude that there is no substantial evidence in support of conviction only if it can be said

---

[2]The trial court instructed the jury pursuant to CALJIC Nos. 3.00 (5th ed. 1988 bound vol.), 3.01 (5th ed 1988 bound vol.), 3.02 (5th ed. 1988 bound vol.), and 3.03 (5th ed. 1988 bound vol.) (hereafter referred to as CALJIC Nos. 3.00, 3.01, 3.02 and 3.03). As given by the court, the instructions are as follows, with internal paragraphing deleted:

CALJIC No. 3.00: "The persons concerned in the commission of a crime who are regarded by law as principals in the crime thus committed and equally guilty thereof include: One, those who directly and actively commit the act constituting the crime, or; two, those who aid and abet the commission of the crime."

CALJIC No. 3.01: "A person aids and abets the commission of a crime when he or she: One, with knowledge of the unlawful purpose of the perpetrator and; two, with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime. A person who aids and abets the commission of a crime need not be personally present at the scene of the crime. Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting. Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting."

CALJIC No. 3.02: "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any criminal act that he knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime originally contemplated, and, if so, whether the crime charged in Counts two and five was [*sic*] a natural and probable consequence of such originally contemplated crime."

CALJIC No. 3.03: "One who has aided and abetted the commission of a crime may end his responsibility for the crime by notifying the other party or parties of whom he has knowledge of his intention to withdraw from the commission of the crime and by doing everything in his power to prevent its commission."

that on the evidence presented no reasonable fact finder could find the defendant to be guilty on the theory presented. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) ▮ On the record presented we find ample evidence to support defendants' convictions for the sexual offense as the natural and probable consequence of the criminal acts in which they participated.

The common law recognized distinctions between the actual perpetrator of an offense (principal in the first degree), and accessories before the fact, at the fact (principals in the second degree), and after the fact. (*People* v. *Woods* (1992) 8 Cal.App.4th 1570, 1581-1582 [11 Cal.Rptr.2d 231].) California law long ago abrogated the distinction between accessories before the fact and principals in the first and second degree. (§§ 31, 971.) While our law still recognizes a distinction between principals and accessories after the fact (§ 32), since the enactment of our original Penal Code in 1872, section 31 has provided, in relevant part: "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or not being present, have advised and encouraged its commission, . . . are principals in any crime so committed."[3]

▮ Thus, the law imposes criminal liability upon all persons "concerned" in the commission of a crime. (§ 31.) As a legal standard this provision creates what may be considered a "bright line" rule. If a person is "concerned" in the commission of a crime then he is guilty of that crime without assessment of the degree of his involvement otherwise. "Liability attaches to anyone 'concerned,' however slight such concern may be, for the law establishes no degree of the concern required to fix liability as a principal." (*People* v. *Talbott* (1944) 65 Cal.App.2d 654, 665 [151 P.2d 317]; see also *People* v. *Durham* (1969) 70 Cal.2d 171, 184-185, fn. 11 [74 Cal.Rptr. 262, 449 P.2d 198].) A person is "concerned" and hence guilty as an aider and abettor if, with the requisite state of mind, that person in any way, directly or indirectly, aided the actual perpetrator by acts or encouraged the perpetrator by words or gestures. (*Pinell* v. *Superior Court* (1965) 232 Cal.App.2d 284, 287 [42 Cal.Rptr. 676]; see also *People* v. *Brown* (1969) 272 Cal.App.2d 623, 627 [77 Cal.Rptr. 650].)

▮ Mere presence at the scene of a crime is not sufficient to constitute aiding and abetting, nor is the failure to take action to prevent a crime,

---

[3]Section 971 provides: "The distinction between an accessory before the fact and a principal, and between principals in the first and second degree is abrogated; and all persons concerned in the commission of a crime, who by the operation of other provisions of this code are principals therein, shall hereafter be prosecuted, tried, and punished as principals, and no other facts need be alleged in any accusatory pleading against any such person than are required in an accusatory pleading against his principal."

although these are factors the jury may consider in assessing a defendant's criminal responsibility. (*People* v. *Durham*, *supra*, 70 Cal.2d at p. 181.) Likewise, knowledge of another's criminal purpose is not sufficient for aiding and abetting; the defendant must also share that purpose or intend to commit, encourage, or facilitate the commission of the crime. (*People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318].) However, as the Supreme Court has clarified, "[t]he requirement that the jury determine the intent with which a person tried as an aider and abettor has acted is not designed to ensure that his conduct constitutes the offense with which he is charged. His liability is vicarious. Like the conspirator whose liability is predicated on acts other than and short of those constituting the elements of the charged offense, if the acts are undertaken with the intent that the actual perpetrator's purpose be facilitated thereby, he is a principal and liable for the commission of the offense. Also like a conspirator, he is guilty not only of the offense he intended to facilitate or encourage, but also of any reasonably foreseeable offense committed by the person he aids and abets. . . . ■ ' *"One may aid or abet in the commission of a crime without having previously entered into a conspiracy to commit it. . . . Moreover, the aider and abettor in a proper case is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable consequences of any act that he knowingly aided or encouraged. Whether the act committed was the natural and probable consequence of the act encouraged and the extent of defendant's knowledge are questions of fact for the jury."* ' . . . [¶] It follows that a defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator. It is the intent to encourage and bring about conduct that is criminal, not the specific intent of the target offense, which *Beeman* holds must be found by the jury. . . ." (*People* v. *Croy* (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392], with citations to *Beeman*, *supra*, and *Durham*, *supra*, omitted and italics in original.)

■ For a criminal act to be a "reasonably foreseeable" or a "natural and probable" consequence of another criminal design it is not necessary that the collateral act be specifically planned or agreed upon, nor even that it be substantially certain to result from the commission of the planned act. For example, murder is generally found to be a reasonably foreseeable result of a plan to commit robbery and/or burglary despite its contingent and less than certain potential. (See *People* v. *Durham*, *supra*, 70 Cal.2d at p. 185; *People*

v. *Kauffman* (1907) 152 Cal. 331, 337 [92 P. 861]; *People* v. *Lapierre* (1928) 205 Cal. 470, 471 [271 P. 500].) In *People* v. *Kauffman, supra,* 152 Cal. at page 335, and later in *People* v. *Durham, supra,* 70 Cal.2d at pages 182 and 183, the Supreme Court formulated the question as whether the collateral criminal act was the ordinary and probable effect of the common design or was a fresh and independent product of the mind of one of the participants, outside of, or foreign to, the common design. (See also *People* v. *Luparello* (1986) 187 Cal.App.3d 410, 444 [231 Cal.Rptr. 832].)

The determination whether a particular criminal act was a natural and probable consequence of another criminal act aided and abetted by a defendant requires application of an objective rather than subjective test. (*People* v. *Woods, supra,* 8 Cal.App.4th at p. 1587; *People* v. *Brigham* (1989) 216 Cal.App.3d 1039, 1051 [265 Cal.Rptr. 486].) This does not mean that the issue is to be considered in the abstract as a question of law. (Cf. *People* v. *Castro* (1985) 38 Cal.3d 301, 316-317 [211 Cal.Rptr. 719, 696 P.2d 111].) Rather, the issue is a factual question to be resolved by the jury in light of all of the circumstances surrounding the incident. (*People* v. *Croy, supra,* 41 Cal.3d at p. 12, fn. 5; *People* v. *Durham, supra,* 70 Cal.2d at p. 181.) Consequently, the issue does not turn on the defendant's subjective state of mind, but depends upon whether, under all of the circumstances presented, a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted by the defendant. (*People* v. *Woods, supra,* 8 Cal.App.4th at p. 1587; see *People* v. *Price* (1991) 1 Cal.4th 324, 443 [3 Cal.Rptr.2d 106, 821 P.2d 610].)

Although the legal distinctions between aiding and abetting before the fact and at the fact have been abrogated, the factual differences between such types of participation in a crime are entitled to consideration. This is recognized in section 31, by decisional authorities (see, e.g., *People* v. *Durham, supra,* 70 Cal.2d at p. 181), and is dictated by logic and common sense. A person who aids and abets before the fact can only act in light of the circumstances prevailing before the fact. In contrast, a person who is present at the commission of a crime for the purpose of assisting in its perpetration has additional opportunity to observe and understand the manner in which the target offense will be committed.

█ A person may aid and abet a criminal offense without having agreed to do so prior to the act. (*People* v. *Durham, supra,* 70 Cal.2d at p. 181; *People* v. *Villa* (1957) 156 Cal.App.2d 128, 134 [318 P.2d 828].) In fact, it is not necessary that the primary actor expressly communicate his criminal purpose to the defendant since that purpose may be apparent from the

circumstances. (*People* v. *Butts* (1965) 236 Cal.App.2d 817, 836 [46 Cal.Rptr. 362]; *People* v. *Stadnick* (1962) 207 Cal.App.2d 767, 772 [25 Cal.Rptr. 30, 99 A.L.R.2d 766].) Aiding and abetting may be committed "on the spur of the moment," that is, as instantaneously as the criminal act itself. (*People* v. *Eskew* (1962) 206 Cal.App.2d 205, 207 [23 Cal.Rptr. 466].) Since, as we have noted, any person concerned in the commission of a crime, however slight that concern may be, is liable as a principal in the crime (*People* v. *Durham, supra,* 70 Cal.2d at pp. 184-185, fn. 11; *People* v. *Talbott, supra,* 65 Cal.App.2d at p. 665), it follows that an aider and abettor will be responsible for a collateral offense if at any time that he does something that directly or indirectly aids or encourages the primary actor in the commission of a crime, it is reasonably foreseeable that a collateral offense may result. In other words, in determining whether a collateral criminal offense was reasonably foreseeable to a participant in a criminal endeavor, consideration is not restricted to the circumstances prevailing prior to or at the commencement of the endeavor, but must include all of the circumstances leading up to the last act by which the participant directly or indirectly aided or encouraged the principal actor in the commission of the crime. (See *People* v. *Jardine* (1981) 116 Cal.App.3d 907, 916-922 [172 Cal.Rptr. 408].)[4]

█ Robbery is a crime that can be committed in widely varying circumstances. It can be committed in a public place, such as on a street or in a market, or it can be committed in a place of isolation, such as in the victim's home. It can be committed in an instant, such as in a forcible purse snatching, or it can be committed over a prolonged period of time in which the victim is held hostage. During hostage-type robberies in isolated locations, sexual abuse of victims is all too common. As Presiding Justice Gardner observed (with respect to residential robbery) in his concurring opinion in *People* v. *Lopez* (1981) 116 Cal.App.3d 882, 891 [172 Cal.Rptr. 374]: "When robbers enter the home, the scene is all too often set for other and more dreadful crimes such as that committed on Mrs. H. in this case. In

---

[4]In *Jardine* the court pushed this concept beyond its appropriate limits. There the court found the defendant to be guilty of aiding and abetting a robbery by helping the robbers to escape after learning of their crime, reasoning that the robbery was not complete until the robbers escaped. (116 Cal.App.3d at pp. 916-922.) This conclusion violated the bright-line rule established in sections 31 and 32, which we will apply in part II of this opinion, that criminal liability as a principal can attach only to acts before or during the commission of a crime and liability as an accessory can attach only to acts after the commission of the offense. To the extent that *Jardine* held that aider and abettor liability may be imposed for helping a robber to escape, it˜was disapproved in *People* v. *Cooper* (1991) 53 Cal.3d 1158, 1169, footnote 14 [282 Cal.Rptr. 450, 811 P.2d 742]. Here we cite *Jardine* only to illustrate the principle that the mental state for aiding and abetting may be contemporaneous with an act by which the principal is aided, advised or encouraged in the commission of the crime and need not precede the act by any appreciable period of time.

the home, the victims are particularly weak and vulnerable and the robber is correspondingly secure. The result is all too often the infliction of other crimes on the helpless victim. Rapes consummated during the robbery of a bank or supermarket appear to be a rarity, but rapes in the course of a residential robbery occur with depressing frequency."

With respect to residential robbery and other isolated victim and hostage-type robberies, we agree with Presiding Justice Gardner's observation, both as a reflection of the reported decisional authorities (see, e.g., *People* v. *Wright* (1990) 52 Cal.3d 367, 384 [276 Cal.Rptr. 731, 802 P.2d 221]; *People* v. *Martinez* (1993) 13 Cal.App.4th 23, 26-27 [16 Cal.Rptr.2d 556]; *People* v. *Jones* (1993) 12 Cal.App.4th 1106, 1109-1110, fn. 2 [16 Cal.Rptr.2d 60]; *People* v. *Barney* (1992) 8 Cal.App.4th 798, 804 [10 Cal.Rptr.2d 731]), and as a synopsis of our experience with criminal cases which this court is regularly required to consider. Robbery victims are sexually assaulted far too often for this court to conclude, as a matter of law, that sexual offenses cannot be a reasonably foreseeable consequence of a robbery.

In turning to the facts of this case we find ample evidence to support a theory that the sexual offenses were a reasonably foreseeable result of the defendants' participation in the group criminal endeavor. The defendants and their cohorts chose to commit robberies in businesses with a sexual aura, both from the types of services they held themselves out as providing and from the strong suspicion, repeatedly expressed by the participants at the trial, that they were actually engaged in prostitution. The businesses were arranged much like a residence, with separate rooms furnished as bedrooms might be. The businesses operated behind locked doors, which both added to their sexual aura and gave the robbers security against intrusion or discovery by outsiders. The robbers went to the businesses in sufficient numbers to easily overcome any potential resistance and to maintain control over the victims for as long as they desired.

When the robbers entered the tanning salon they took control of the premises and took hostage the proprietor and her employee. They maintained their control over the premises and the victims for a significant period of time. At least some of the robbers sexually assaulted the proprietor with a pistol as a means of adding to her fear and forcing her to give up her valuables. While the proprietor was sexually assaulted all of the robbers continued to carry out their criminal endeavor. Assuming the defendants were not actual perpetrators of the sexual offense, their continuing participation in the criminal endeavor aided the perpetrators by providing the control and security they needed to tarry long enough to commit the sexual offense, by helping to convince the victim that resistance would be useless,

and by dissuading the victim's employee from any notion she may have formed of going to the victim's assistance. While the defendants participated in the criminal endeavor the foreseeability of sexual assault went from possible or likely to certain, yet defendants continued to lend their aid and assistance to the endeavor. Under these circumstances it will not do for defendants to assert that they were concerned only with robbery and bear no responsibility for the sexual assault. (See *People* v. *Villa, supra,* 156 Cal.App.2d at pp. 135-136; *People* v. *Mummert* (1943) 57 Cal.App.2d 849, 855 [135 P.2d 665]; *People* v. *Macchiaroli* (1921) 54 Cal.App. 665, 667 [202 P. 474].)[5]

█ Defendants contend that the trial court erred in refusing to give a special explanatory instruction requested by Dung Nguyen which reads as follows: "The intent to commit robbery is entirely separate from the intent to commit the sexual offenses alleged in the information, including sexual battery and penetration by foreign object. A defendant who shared an intent to rob may therefore not have also shared the intent of another to commit any or all of the alleged sexual offenses. The question of intent must be considered separately as to each offense alleged in the information."

The court properly rejected this instruction. The instruction is an erroneous statement of the law in two respects. First, an aider and abettor need not share the intent of the principal actor, although that is one example of the intent required for aiding and abetting. What is required is that the aider and abettor either share the actor's intent or intend to commit, encourage, or facilitate the commission of a crime. (*People* v. *Croy, supra,* 41 Cal.3d at pp. 11-12.) The defendant might act out of friendship for the perpetrator, dislike for the victim, general meanness, or just for the thrill of it, but so long as he intentionally encourages or facilitates the commission of the offense he is guilty as an aider and abettor. (*Ibid.*) Second, the rejected instruction ignores the rule we have applied above, that an aider and abettor "need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator" but is responsible for any reasonably foreseeable consequence of the criminal conduct he intentionally encouraged or facilitated. (*Id.* at p. 12, fn. 5.)

---

[5]Defendants Thiep Nguyen and Dung Nguyen argue that it was error to give the instruction based upon CALJIC No. 3.02 with respect to the sexual offense committed during either of the two criminal endeavors. Defendant Ahn Tran makes this argument only with respect to the tanning salon incident, conceding that the convictions for the lesser related offense of being an accessory after the fact to the sexual offense at the relaxation spa obviated any error with respect to that offense. While we agree with counsel for Ahn Tran on the concession point, we note that defendants and their cohorts went immediately from the tanning salon to the relaxation spa to engage in an identical criminal endeavor. Under these circumstances the fact that a victim was sexually assaulted in the first endeavor is compelling evidence that sexual assault was a reasonably foreseeable consequence of the second.

■ Defendant Ahn Tran argues that the instruction given by the court was phrased in terms of the "natural and probable" consequences of the target offense and thus failed to advise the jury of the "reasonably foreseeable" requirement. Defendant equates "reasonably foreseeable" with subjective awareness and asserts that "natural and probable" implies a "not abnormal" and "not unlikely" standard (see *People* v. *Rogers* (1985) 172 Cal.App.3d 502, 515, fn. 17 [217 Cal.Rptr. 809]), and thus fails to focus on subjective awareness.

The test for an aider and abettor's liability for collateral criminal offenses is neither legally abstract nor personally subjective. It is case specific, that is, it depends upon all of the facts and circumstances surrounding the particular defendant's conduct. Within that context it is objective; it is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted. (*People* v. *Price*, *supra*, 1 Cal.4th at p. 443; *People* v. *Woods*, *supra*, 8 Cal.App.4th at p. 1587.) The test is not, as defendant asserts, subjective in nature. (*Ibid.*)

In *People* v. *Rogers*, *supra*, 172 Cal.App.3d at page 515, in footnote 17, this court noted that the decisional authorities inexplicably vary the causal terminology by which the standard is expressed. Thus, the standard has been stated in terms of "natural and reasonable" consequences and "natural and probable" consequences (*ibid.*), and, as we have noted above, in terms of "reasonable foreseeability." In criminal law, as in tort law, to be reasonably foreseeable "[t]he consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. . . ." (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 132, p. 150.) The instruction given by the trial court here utilized the "natural and probable" language that has been at times utilized by decisional authorities, including Supreme Court decisions, to express the standard. Without further definition the use of the word "probable" in the instruction would imply a more-likely-than-not standard, and as such is the most stringent of the verbal characterizations reflected in the reported decisions. Phrasing the test in terms of "natural and probable" consequences rather than "reasonably foreseeable" consequences could only have inured to the benefit of the defendants and is not cause for reversal of the convictions.

## II

■ With respect to the sexual assault that occurred at the relaxation spa, the jury acquitted the defendants of the principal charge of sexual penetration with a foreign object and found them to be guilty of the lesser

related offense of being accessories to that offense. (§ 32.) Defendants contend that the evidence is insufficient to support their convictions as accessories and that in any event the trial court erred by failing to instruct the jury that it must unanimously agree on the act or acts that constitute the offense. (See CALJIC No. 17.01.) We agree with the first contention and will reverse the convictions for being accessories.

Section 32 provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." A conviction under section 32 requires proof that a principal committed a specified felony, the defendant knew that the principal had committed a felony, the defendant did something to help the principal get away with the crime, and that as a result of this action the defendant intended to help the principal get away with the crime. (*People* v. *Prado* (1977) 67 Cal.App.3d 267, 271 [136 Cal.Rptr. 521]; *People* v. *Duty* (1969) 269 Cal.App.2d 97, 104 [74 Cal.Rptr. 606].)

Guilt as a principal and being an accessory after the fact have been said to be mutually exclusive. (*People* v. *Prado, supra,* 67 Cal.App.3d at p. 273.) However, the mutually exclusive concept should not be overstated. This concept is merely an application of the "bright line" rule we have referred to in connection with principals under section 31, that is, anyone "concerned" in the commission of a crime, no matter how slight such concern may be, is guilty as a principal. (*People* v. *Talbott, supra,* 65 Cal.App.2d 654, 665.) Such a person must commit or intentionally encourage or assist another to commit an offense before or during the commission of the crime. (*People* v. *Durham, supra,* 70 Cal.2d at p. 181.) An accessory, on the other hand, must lend assistance to the principal after the commission of the offense with the intent of helping him escape capture, trial or punishment. (*People* v. *Gassaway* (1865) 28 Cal. 404, 405-406; *People* v. *Prado, supra,* 67 Cal.App.3d at p. 271.) A principal may, of course, also commit acts with the requisite intent that would otherwise constitute the elements of being an accessory. However, in such circumstances his conduct is subsumed within his guilt as a principal and he may not be convicted both as a principal and as an accessory. (*People* v. *Francis* (1982) 129 Cal.App.3d 241, 251-252 [180 Cal.Rptr. 873]; cf. *People* v. *Stewart* (1986) 185 Cal.App.3d 197, 206-207 [229 Cal.Rptr. 445].)[6]

There often will be an evidentiary overlap in the proof that would establish aiding and abetting and the proof that would establish being an

---

[6]In *People* v. *Prado, supra,* 67 Cal.App.3d at page 273, the court concluded that the state of mind required to be an accessory necessarily excludes the state of mind required to be a

accessory. For example, the defendant's presence at the scene of the crime has been identified as a relevant factor for consideration in both aiding and abetting and in being an accessory. (*People* v. *Durham, supra,* 70 Cal.2d at p. 181; *People* v. *Duty, supra,* 269 Cal.App.2d at p. 104.) But while there may be an evidentiary overlap, the elements of the two types of criminal responsibility are separate and distinct. (*People* v. *Mitten* (1974) 37 Cal.App.3d 879, 883 [112 Cal.Rptr. 713].) Being an accessory is not a lesser included offense within aiding and abetting. (*People* v. *Prado, supra,* 67 Cal.App.3d at p. 273.) In fact, there is no lesser included offense within aiding and abetting, since any criminal responsibility in the commission of the crime is sufficient for conviction as a principal. (*People* v. *Talbott, supra,* 65 Cal.App.2d at p. 665.) In contrast, an accessory's criminal liability does not arise out of some manner of responsibility for the commission of the offense (*People* v. *Mitten, supra,* 37 Cal.App.3d at p. 883), although, as we have noted, the circumstances surrounding the commission of the offense may be highly probative on a charge of being an accessory.

A person who is in some manner involved in a crime and/or its aftermath may be guilty of the crime as an aider and abettor or of the distinct offense of being an accessory, but in order for the defendant to be found guilty of either, all of the elements applicable to one or the other must coalesce at an appropriate time. A person who unwittingly aids a perpetrator does not become an accessory when he later learns of the perpetrator's criminal purpose unless he thereafter does something to help the perpetrator get away with his crime. (*People* v. *Duty, supra,* 269 Cal.App.2d at p. 104; *People* v. *Hardin* (1962) 207 Cal.App.2d 336, 341 [24 Cal.Rptr. 563].)

 In this instance the basic criminal endeavor at the relaxation spa (robbery) was quite similar to the criminal endeavor at the tanning salon. However, the sexual assault at the relaxation spa differed from the sexual

---

principal. We disagree for two reasons. First, *Prado* identified the state of mind required to be a principal as the specific intent required for commission of the crime, using the example of robbery and the intent to permanently deprive the owner of his property. (*Ibid.*) Our Supreme Court has since made it clear that the specific intent of the target offense is not the intent required for aiding and abetting, although it would suffice. (*People* v. *Croy, supra,* 41 Cal.3d at p. 12, fn. 5.) Thus, the premise of the *Prado* reasoning has been disproved. Second, although we agree with *Prado* that the intent required as an aider and abettor and the intent required as an accessory are not identical, we perceive nothing that would preclude an individual from harboring those intents in succession and coupling those intents with conduct. (See *People* v. *Francis, supra,* 129 Cal.App.3d at pp. 251-252; cf. *People* v. *Stewart, supra,* 185 Cal.App.3d at pp. 207-209.) Hence we find nothing illogical or inconsistent in finding that a defendant committed intentional acts that would constitute aiding and abetting and that he then committed intentional acts that would be sufficient to render him an accessory, although in such circumstances a conviction as a principal would preclude conviction as an accessory as well. (*Ibid.*)

assault at the tanning salon. At the tanning salon the sexual assault was a component of the robbery, that is, it was committed as a means of threatening the victim to force her to give up her valuables. The victim was assaulted sexually with two foreign objects, a gun and a breath-spray canister. The sexual assault occurred over a protracted period of time during which all of the robbers continued in their criminal enterprise. In contrast, the sexual assault at the relaxation spa was not utilized as a means of threatening the victim for her valuables, was accompanied by sexual rather than larcenous comments, and was committed with a finger. When one or more of the robbers were sexually assaulting the victim, another robber said, "Stop it, quit doing that to her." Under these circumstances the jury found defendants to be principals in the robbery and sexual assault at the tanning salon and in the robberies at the relaxation spa, but had at least a reasonable doubt that the sexual assault at the relaxation spa was a natural and probable consequence of the criminal endeavor in which they participated. That doubt entitled defendants to outright acquittal on charges arising out of the *commission* of the sexual assault. Defendants cannot be convicted as accessories based upon some notion of responsibility for the commission of the offense less than that which is sufficient for conviction as principals. (*People* v. *Mitten, supra,* 37 Cal.App.3d at p. 883.)

Although the jury did not find that the sexual assault was a natural and probable consequence of the planned robberies, the evidence would certainly support the jury's implied finding that the defendants became aware that their cohorts had committed that offense during the course of the robberies. But that awareness is not sufficient to make defendants accessories unless thereafter they intentionally did something to help their cohorts to avoid or escape arrest, trial, conviction or punishment for that offense. (§ 32.)

The record reveals that near the end of the relaxation spa incident the robbers heard sirens from a fire engine which they mistook for police sirens and they fled. Defendant Dung Nguyen abandoned his borrowed car at the scene and shortly thereafter he and Thiep Nguyen were located by police as they were attempting to hitchhike away from the scene. Defendant Ahn Tran made his way home in some manner not revealed by the record and he was arrested later than night. Flight is evidence of criminal guilt. (§ 1127c.) But defendants' flight was referable to their guilt as robbers. There is nothing in the record to show that they helped the perpetrator(s) of the sexual assault to escape or that their own flight was anything more than a personal attempt to avoid capture, trial, conviction and punishment.

Upon their arrests all of the defendants were in possession of personal property stolen from victims at the relaxation spa. Defendants' possession of

stolen property, like their flight from the scene, is referable to their guilt as robbers. Without more, their possession of the property which they stole is not sufficient to make them accessories in the unforeseen sexual assault. (See *People* v. *Stakem* (1871) 40 Cal. 599, 601.)

Dung Nguyen and Thiep Nguyen refused to talk to the police. Obviously the exercise of the constitutional right to remain silent cannot be the basis for conviction as an accessory. Ahn Tran waived his rights and talked with police investigators. He admitted being present at the scene of the robberies but downplayed his role. While in some circumstances supplying an affirmative and deliberate falsehood to public authorities, such as by providing a false alibi, is sufficient to make the relator an accessory (*People* v. *Duty*, *supra*, 269 Cal.App.2d at p. 104), nothing in Tran's statement went so far.

We find nothing else in the record, and the Attorney General has pointed to nothing, which would arguably support defendants' convictions as accessories to the sexual assault at the relaxation spa. Accordingly, we conclude that defendants' convictions as accessories to that sexual assault are not supported by substantial evidence and must be reversed.

### III-VIII*

. . . . . . . . . . . . . . . . . . . . . . .

### CONCLUSION

We have determined that the conviction of each defendant on count five, being an accessory to sexual penetration with a foreign object in concert, must be reversed for a lack of substantial evidence in support of conviction. We have also determined that the special findings that defendant Dung Nguyen personally used a firearm in committing the robberies at the relaxation spa, counts three, four, six, and seven, must be reversed for a lack of substantial evidence. These conclusions require modification of the defendants' sentences in the following respects:

Dung Nguyen: Dung was sentenced to state prison for a total unstayed term of 21 years 8 months. Of this total, eight months represented a consecutive sentence for being an accessory to sexual penetration with a foreign object in concert. Dung's total unstayed prison term must be reduced by eight months to reflect the reversal of that conviction. Dung received a five-year sentence enhancement for the personal use of a firearm in connection with count three, robbery, and all other special findings were stayed.

*See footnote, *ante*, page 518.

The reversal of the personal use findings requires the reduction of five years from Dung's total unstayed prison term, however, this also requires the discharge of the stay of the one-year enhancement for being armed with a firearm (§ 12022, subd. (a)) in connection with that count. This results in a net enhancement reduction of four years and a total reduction of four years and eight months from Dung's total unstayed prison term. Dung's total unstayed prison term will be modified to 17 years and affirmed as modified.

Thiep Nguyen: Thiep was sentenced to a total unstayed prison term of 20 years, of which 8 months represented a consecutive sentence for being an accessory to sexual penetration with a foreign object. While the sentence for being an accessory must be eliminated, no actual reduction of Thiep's total unstayed prison term is required. The trial court stayed one year and eight months of Thiep's sentence pursuant to section 1170.1, subdivision (a), the five-year limitation upon subordinate terms for convictions which are not "violent felonies" within the meaning of section 667.5, subdivision (c). The elimination of the sentence for being an accessory requires a discharge of the stay of the subordinate sentences to a corresponding extent. Accordingly, Thiep's sentence must be modified to reflect elimination of the eight-month unstayed term imposed for being an accessory, and the discharge of the stay of eight months of his other subordinate terms. Thiep's total unstayed prison term remains at 20 years.

Ahn Tran: Ahn, like Thiep, received a total unstayed prison term of 20 years. Ahn's unstayed term included eight months attributable to his conviction for being an accessory and a stay of eight months of subordinate terms to comply with the five-year limitation on subordinate terms for nonviolent felonies in section 1170.1, subdivision (a). Ahn's unstayed prison term must be modified to eliminate the sentence for being an accessory and to discharge the stay upon his other subordinate terms. These modifications balance each other and Ahn's unstayed prison term will remain at 20 years.

DISPOSITION

The convictions of each defendant on count five, a violation of Penal Code section 32, are reversed. The special findings that defendant Dung Van Nguyen personally used a firearm in committing robbery in counts three, four, six and seven, are reversed. Dung Van Nguyen's sentence is modified to eliminate the consecutive sentence for count five (§ 32), to eliminate the five-year enhancement for personal use of a firearm (§ 12022.5) in connection with count three, to discharge the stay of the one-year enhancement for being armed with a firearm (§ 12022, subd. (a)) in connection with that count, and to reduce the total unstayed prison term to seventeen years. As

modified the judgment is affirmed as to Dung Van Nguyen. Thiep Van Nguyen's sentence is modified to eliminate the consecutive sentence for count five (§ 32), and to discharge the stay pursuant to section 1170.1, subdivision (a), with respect to eight months of his subordinate terms. As modified Thiep Van Nguyen's 20-year unstayed prison term is affirmed. Ahn Van Tran's sentence is modified to eliminate the consecutive sentence for count five (§ 32), and to discharge the stay of his subordinate terms pursuant to section 1170.1, subdivision (a). As modified Ahn Van Tran's 20-year unstayed prison term is affirmed. The trial court is directed to forward amended abstracts of judgment reflecting these modifications to the Department of Corrections.

Davis, J., and Nicholson, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 31, 1994.