Filed 12/5/1  Villa v. Super. Ct. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| HASANI VILLA,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF TULARE COUNTY,<br><br>Respondent;<br><br>THE PEOPLE,<br><br>Real Party in Interest. | F064505<br><br>(Super. Ct. No. VCF234216)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Gerald F. Sevier, Judge.

Michael B. Sheltzer, Public Defender, Lisa J. Bertolino, Assistant Public Defender, and Timothy B. Rote, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Phillip J. Cline, District Attorney, Shani D. Jenkins, Assistant District Attorney, Philip W. Esbenshade and John F. Sliney, Deputy District Attorneys, for Real Party In Interest.

-ooOoo-

In these writ proceedings, Hasani Villa asks us to order the superior court to dismiss the murder charge and related charges that have been filed against him on the ground that he has already been convicted of being an accessory to the same murder after the fact. We summarily denied Villa's writ petition on May 10, 2012, but the California Supreme Court granted review and ordered us to issue an alternative writ. Having done so and having carefully reviewed the parties' submissions, we now conclude that the murder charge cannot properly be dismissed. *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*), on which Villa relies, is distinguishable. We will deny the petition.

## FACTUAL AND PROCEDURAL HISTORIES

The district attorney filed a complaint in Tulare County Superior Court case No. VCF217634 against Villa and a codefendant, Evaristo Enriquez, on February 4, 2009, charging them with murder and related charges. At the preliminary hearing on October 30 and November 4, 10 and 24, 2009, the People presented evidence that Villa, Enriquez, Martin Cuevas, Villa's brother Ricardo, and another person named Ricardo were in a car driven by Villa in Orosi on October 25, 2008. Villa and his brother were in the front seats and the other three in the back seats. At least Villa and Enriquez were members of the Big Time Locos clique of the Sureños gang. Later, when he was arrested, Villa was wearing a blue shirt and a blue rag and had a cigarette lighter with "SUR" (i.e., "south") scratched in it. Blue is the color of the Sureños.

Villa's car and a tan SUV stopped side-by-side at a traffic light. The occupants of Villa's car saw people in the other car making gang signs at them with their hands, displaying red bandannas and placing the bandannas over their lower faces. Red is the color of the Norteños, who are the Sureños' rivals. As the light turned green, Enriquez pointed a sawed-off .22 caliber semiautomatic rifle out the rear window and fired several shots at the SUV. One of the bullets struck the SUV's driver, James Mesa, in the head, killing him. The SUV veered off the road into a parking lot, hit a pole and overturned.

2.

After the shooting, Villa continued driving and went to Enriquez's house. There, Villa and his passengers searched the car for shell casings, which they threw over a fence. They removed the car's hubcaps to change its appearance. Enriquez hid the gun in a canal.

When he was interviewed by police, Villa admitted the facts of the shooting and his efforts to remove evidence from the car and change its appearance. He claimed, however, that he did not know Enriquez was carrying a gun until the shooting started.

The court held Villa and Enriquez to answer the charges. The district attorney filed an information on December 4, 2009, charging both defendants with murder (Pen. Code, § 187, subd. (a))[1] with drive-by and gang-murder special circumstances (§ 190.2, subd. (a)(21), (22)). The murder charges included enhancement allegations of firearm use and gang participation. (§§ 186.22, subd. (b)(1)(C), 12022.53, subds. (b)-(e).) Enriquez was 15 years old at the time of the crimes, but was charged as an adult under Welfare and Institutions Code section 707, subdivision (d)(2)(A). Villa was 18. The information also charged Villa and Enriquez with shooting from a motor vehicle (former § 12034, subd. (c)), shooting at an occupied vehicle (§ 246), and, for the passengers in the SUV, three counts of attempted murder (§§ 187, subd. (a), 664).

Villa filed a motion to dismiss pursuant to section 995, which was heard on February 25, 2010.[2] The motion was granted on March 11, 2010. The same day, the People filed a complaint in Tulare County Superior Court case No. VCF234216, again charging Villa with murder and related charges. After a preliminary hearing held on March 23 and April 7, 2010, Villa was again held to answer. The People filed a new information against Villa alone on April 16, 2010. The charges were the same as in the

---

[1]     All statutory references are to the Penal Code unless otherwise stated.

[2]     Section 995 provides that a trial court shall dismiss an information if it finds the defendant has been committed without reasonable or probable cause.

prior information, except that the count for shooting from a motor vehicle was now charged under former section 12034, subdivision (d) instead of subdivision (c), and a new count was added for allowing another to shoot from a car which the defendant is driving (former § 12034, subd. (b)).

Villa filed another section 995 motion, which was heard on May 26, 2010. On June 10, 2010, the court granted the motion.

The same day, June 10, 2010, the People filed a complaint in Tulare County Superior Court case No. VCF237804, charging Villa with being an accessory after the fact (§ 32) to the murder committed by Enriquez. The People also appealed from the dismissal of case No. VCF234216, their notice of appeal being received by this court on August 16, 2010.

Villa filed a motion to dismiss the latest complaint pursuant to *Kellett*. In *Kellett,* the Supreme Court stated that "[w]hen, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause." (*Kellett, supra*, 63 Cal.2d at p. 827.) On June 18, 2010, the trial court dismissed the complaint, relying instead on section 1387, which provides that two orders dismissing an action pursuant to section 995 bar "any other prosecution for the same offense."

Despite the trial court's decision to dismiss the complaint, the parties reached a plea agreement. On November 9, 2010, the court reinstated the complaint and Villa pled no contest to the section 32 charge and admitted a gang enhancement allegation. The parties stipulated to a factual basis for the plea based on the investigative reports. The prosecutor stated that, depending on the outcome of the appeal in case No. VCF234216, the People might still pursue the murder charge later, in spite of the plea on the accessory charge. On December 9, 2010, the court imposed a sentence of seven years, suspended it, and required Villa to serve five years of probation.

This court decided the People's appeal in case No. VCF234216 on June 28, 2011, reversing the trial court's order dismissing the information. (*People v. Villa* (June 28, 2011, F060655) [nonpub. opn.].) We concluded that the committing magistrate could rationally find that there was probable cause to hold Villa to answer on the murder charge on an aiding-and-abetting theory. We focused on several facts: Villa, a gang member, was driving a car with other gang members when a confrontation developed between them and rival gang members in another car. He chose to drive alongside the other car as the confrontation continued. Expert testimony established that an armed gang member ordinarily tells other gang members about his gun before riding with them in a car. Villa had told police he usually asked his passengers if they were armed. The gun was 24 inches long and hard to conceal. Villa likely saw it when Enriquez was preparing to fire. Villa did not stop driving beside the other car when the gun was drawn or when the shooting began; he continued driving side-by-side for a block as 12 shots were fired. After the shooting, Villa fled, disposed of evidence, and altered the appearance of his car. All these facts supported the prosecution's claims that Villa helped Enriquez commit murder and had the knowledge and intent necessary to support a murder conviction.[3] We remanded case No. VCF234216 to the superior court. (*People v. Villa, supra,* F060655.) The California Supreme Court denied review (*People v. Villa* (Oct. 19, 2011, S195393)) and the information was reinstated.

Villa filed a motion in the superior court to dismiss under *Kellett* and another motion to dismiss under the doctrine of prosecutorial preclusion. The court heard the motions on January 26 and February 2, 2012, and denied them.

Villa filed the present petition in this court on March 16, 2012, asking us to order the trial court to dismiss the information under *Kellett* and the doctrine of prosecutorial preclusion. We denied the petition without opinion on May 10, 2012. The California

[3]     Enriquez pleaded guilty to voluntary manslaughter on June 30, 2011.

5.

Supreme Court granted Villa's petition for review on July 11, 2012, and transferred the matter back to us with directions to issue an alternative writ on the *Kellett* issue only. (*Villa v. Superior Court* (July 11, 2012, S202589).) We did so on July 18, 2012, directing the superior court either to place the matter on its own calendar and consider whether the murder prosecution was barred under *Kellett* or to show cause why the relief requested by Villa should not issue. The court elected to show cause and we ordered briefing.

## DISCUSSION

Villa's argument is that the murder prosecution is barred by section 654 as interpreted in *Kellett*. There is no dispute about the facts upon which this argument is based, so we are presented with a pure question of law, which we review de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

Subdivision (a) of section 654 contains limitations on both multiple punishment and multiple prosecutions for the same acts:

> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Elmer Kellett was arrested while standing on a sidewalk holding a pistol. He was charged in municipal court with exhibiting a firearm in a threatening manner, a misdemeanor. At the preliminary hearing, it was revealed that he had previously been convicted of a felony. He was then charged in superior court, for the same incident, with being a felon in possession of a concealable weapon. (*Kellett, supra*, 63 Cal.2d at p. 824.)

Kellett pled guilty to the misdemeanor and was sentenced to 90 days in jail. Then he moved to dismiss the felony, relying on section 654. The court denied his motion and

6.

he filed a writ petition in the Supreme Court. He argued that he could not be subjected to successive prosecutions for the same act. The People argued that it could reasonably be inferred that he had possessed the pistol for some time before he exhibited it on the sidewalk, so there were separate acts of possession and exhibition that supported separate prosecutions for the two offenses. (*Kellett, supra*, 63 Cal.2d at p. 824.)

The Supreme Court began its analysis by discussing *Neal v. State of California* (1960) 55 Cal.2d 11, 19. (*Kellett, supra,* 63 Cal.2d at pp. 824-825.) In *Neal*, which dealt with multiple punishment, the Supreme Court affirmed the proposition that section 654 bars multiple punishment not only where a single act gives rise to multiple offenses, but also where a single indivisible course of conduct does so. Whether a course of conduct is divisible depends on whether the defendant had one or more than one criminal objective. (*Neal v. State of California, supra*, 55 Cal.2d at p. 19.)

In *Kellett*, the court went further and held that section 654 may be a bar to successive *prosecutions* even when a course of conduct was motivated by multiple objectives and therefore was divisible for the purpose of multiple punishment. (*Kellett, supra*, 63 Cal.2d at p. 827.) The reason given for this holding was that "[t]here has been growing concern that both criminal defendants and the public fisc are entitled to protection from successive prosecutions for closely related crimes." (*Id.* at p. 826.) "If needless harassment and the waste of public funds are to be avoided," the court stated, then "some acts that are divisible for the purpose of punishment must be regarded as being too interrelated to permit their being prosecuted successively." (*Id*. at p. 827.) To give effect to this policy, the court established the following rule:

> "When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett, supra,* 63 Cal.2d at p. 827.)

7.

We agree with Villa that the murder prosecution and the accessory prosecution are based on the same course of events and that the prosecution knew all the facts from the outset. Even if, as the People argue, the course of conduct is divisible and would support separate punishments under section 654, we think it is clear that the murder and the accessory offense are offenses "in which the same act or course of conduct play[ed] a significant part." (*Kellett, supra,* 63 Cal.2d at p. 827.) The facts establishing accessory liability are that Villa fled with Enriquez and helped him hide evidence. Those facts are part of a continuous course of conduct starting at the traffic light and ending with the effort to hide the evidence. Further, the facts supporting the accessory conviction—flight, hiding evidence—are also relevant to the charge of aiding and abetting murder, since they are probative of Villa's consciousness of guilt with respect to that charge. This case would fall squarely within *Kellett* if the prosecution had brought the accessory prosecution first, pursued it to judgment, and pursued the murder prosecution afterwards. The case would also fall within *Kellett* if the prosecution had brought the murder prosecution first, pursued it to conviction or acquittal, and then brought or continued the accessory prosecution.

There are at least two types of scenarios the rule of *Kellett* guards against: In the first of these, the district attorney brings a prosecution for one offense, pursues it to judgment but is dissatisfied with the result, and then brings another prosecution based on the same facts to get more severe punishment. This is what happened in *Ciucci v. Illinois* (1958) 356 U.S. 571, which is discussed in *Kellett*. (*Kellett, supra*, 63 Cal.2d at pp. 826-827.) The defendant murdered his wife and three children, all at the same time. The prosecution prosecuted him for three of the murders successively in three separate trials. In the first two trials, the jury imposed prison sentences. In news articles, statements were attributed to the prosecution expressing dissatisfaction with these sentences and a determination to obtain the death penalty. In the third trial, the jury returned a death verdict. (*Ciucci v. Illinois, supra*, 356 U.S. at pp. 572-573.)

8.

In the second type of scenario, the district attorney initiates a prosecution for a lesser offense, but learns while that prosecution is pending of additional facts, which it should have known from the beginning, and uses these as the basis for initiating a second proceeding.  The district attorney obtains judgment in the first proceeding and then pursues the second.  This is what happened in *Kellett* itself.  (*Kellet*, *supra*, 63 Cal.2d at p. 824.)

The present case involves neither of these scenarios.  The crucial difference lies in the reason for the prosecution's pursuit of the challenged charges.  As the People argue, we are not dealing here with an attempt to proceed with a subsequent prosecution, but rather an effort to continue the original prosecution.  Murder is what the People attempted to prosecute Villa for from the outset; the People are only returning to their original intention to seek conviction on the most serious charges they believed the evidence supported.  *Kellett* sets up a bar to "subsequent prosecution[s]" for offenses omitted from the "initial proceedings."  (*Kellett, supra,* 63 Cal.2d at p. 827.)  That is not what happened here.  The People here pursued a prosecution for a lesser offense only after the superior court erroneously dismissed the murder information; then they resumed the murder prosecution after we reversed.  The People cannot be faulted for obtaining a conviction on another, lesser charge while their appeal from the dismissal of the original case was pending, for their job was to ensure that Villa was held accountable.  We are not relying on an empty technical distinction.  This case is not within the rule of *Kellett.*

Additionally, the steps the People took involved none of the dangers about which the *Kellett* court was concerned.  The prosecution cannot be said to have acted to harass Villa by resuming the murder prosecution, since it was only continuing the prosecution it intended to pursue from the outset after a delay that was not its fault.  Villa argues that it was the prosecution's fault, since the People could have included the section 32 charge in the murder information.  *Kellett*, however, does not stand for the proposition that it is harassment if the prosecution omits a charge of a lesser offense but later chooses to

pursue that charge when the main charge is erroneously dismissed. Finally, there is no waste of resources of the kind that motivated *Kellett*, because the prosecutor only brought the accessory prosecution when the superior court erroneously dismissed the murder prosecution and because Villa pled no contest to the accessory charge, avoiding the need for a trial. (See *People v. Davis* (2005) 36 Cal.4th 510 [successive prosecution not precluded where arguable harassment and use of public resources was minimal]; *In re Dennis B.* (1976) 18 Cal.3d 687 [*Kellett*'s anti-harassment-and-waste rationale provided guidance for determining literal terms of the *Kellett* rule did not apply to preclude prosecution of vehicular manslaughter subsequent to trial for unsafe lane change].) For these reasons, we conclude that *Kellett* and section 654 do not bar the present prosecution.

Villa relies on *People v. Prado* (1977) 67 Cal.App.3d 267, but that case has nothing to do with *Kellett* or section 654, and therefore is not related to the single issue upon which the Supreme Court granted review. We need not consider it.

Even if *Prado* were on point, we would not follow it. In that case, the Court of Appeal held that the defendant could not be convicted of both robbery and being an accessory after the fact to his codefendant's commission of the same robbery, because robbery and accessory-after-the-fact are "mutually exclusive offenses":

> "The foregoing authorities, and right reason, compel a conclusion that when an accused is convicted of violation of Penal Code section 32, which necessarily requires that a *principal* have committed a specific completed felony and that he knowingly aided that principal with intent that the principal escape arrest, he cannot be convicted as a principal in that completed felony. His state of mind—the intent required to be an accessory after the fact—excludes that intent and state of mind required to be a principal. The requisite intent to be a principal in a robbery is to permanently deprive the owner of his property. Thus, this is a totally different and distinct state of mind from that of the accused whose intent is to aid the robber to escape. These are mutually exclusive states of mind and give rise to mutually exclusive offenses." (*People v. Prado, supra*, 67 Cal.App.3d at p. 273.)

We do not see how the two different intents are mutually exclusive. There is no reason why a perpetrator of a crime cannot first have the intent to commit the crime and afterwards have the intent to help a coperpetrator escape arrest. In this conclusion, we agree with *People v. Nguyen* (1993) 21 Cal.App.4th 518, 536-537, footnote 6.

We believe the *Prado* court's analysis was wrong, but even if it were correct, it would not control the present case. The court stated that "[e]ssentially the same acts are relied upon to prove [the defendant's] participation in the robbery on the aiding and abetting theory, and to prove he was an accessory after the fact." (*People v. Prado, supra*, 67 Cal.App.3d at p. 274.) Contrary to Villa's contentions, the same is not true in this case. Here the charge of aiding and abetting murder is based primarily on the evidence that Villa drove alongside the rival gang members' car for a block, without turning or stopping, while Enriquez fired 12 shots out the window; that Villa had ample opportunity to know Enriquez brought the gun into the car; and that Villa knew a gang confrontation had developed between the two cars. The accessory conviction was based on Villa's actions after the shooting was over and he fled with the shooter and concealed the evidence. There is overlap between the evidence of the two offenses since, as we have said, the facts supporting accessory liability also tend to show consciousness of guilt in the murder. Yet the two prosecutions do not rely on essentially the same acts. They rely on essentially different acts: being the driver in a drive-by shooting in the murder case, and helping the shooter get away and avoid detection afterward in the accessory case.

*Prado*, however, is not the only case supporting the view that it is legally inconsistent to convict a defendant of a crime as well as of being an accessory to the same crime after the fact. Although the *Nguyen* court rejected *Prado*'s analysis about mutually exclusive intents, it agreed that a defendant cannot properly be convicted of both offenses. It held that when a principal commits additional acts that constitute the elements of being an accessory, "his conduct is subsumed within his guilt as a principal

11.

and he may not be convicted both as a principal and as an accessory." (*People v. Nguyen, supra*, 21 Cal.App.4th at p. 536.)

There also is authority to the contrary. In *People v. Mouton* (1993) 15 Cal.App.4th 1313, 1324-1325, the Court of Appeal held that because the defendant "in substance … was convicted for two different sets of actions," his "responsibility both as an accomplice to the murder and for the separate and distinct crime of acting as an accessory to a felony [i.e., the same murder] was neither logically inconsistent nor legally prohibited."

We need not decide whether it is correct to say that if Villa is found guilty of murder in this case, he will stand convicted of legally inconsistent offenses. As we have said, that question is outside the scope of the issue on which the Supreme Court granted review. Further, Villa does not argue that his guilt for murder would subsume his guilt for the accessory offense; his view is that the accessory conviction bars the murder prosecution.

Even if the two offenses are incompatible, it is not necessarily the *murder* conviction that must be excluded. If Villa is convicted of murder, it may be appropriate to apply to his case (via writ proceedings) a "rule remedying any impropriety of multiple conviction as principal and accessory in those cases in which the former conviction is error-free and supported by substantial evidence by affirming the [conviction as principal] and vacating the [conviction as accessory]." (*People v. Francis* (1982) 129 Cal.App.3d 241, 251.)

12.

**DISPOSITION**

The petition is denied. The People's request, filed September 13, 2012, for judicial notice of the appellate record in case No. F060655 is granted. The stay of proceedings included in this court's order filed August 14, 2012, is vacated.

_____

DETJEN, Acting P.J.

WE CONCUR:

_____

FRANSON, J.

_____

OAKLEY, J.*

---

*       Judge of the Superior Court of Madera County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13.