Filed 6/23/14  P. v. Webster CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>DERWIN L. WEBSTER,<br><br>　　　　　Defendant and Appellant. | B246222<br><br>(Los Angeles County<br>　Super. Ct. No. BA302020) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Bob S. Bowers, Jr., Judge.  Affirmed as modified, remanded with directions.

Alan Stern, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Derwin L. Webster appeals his conviction by jury of multiple drug offenses. Defendant raises two contentions: (1) his conviction on count 14, false compartment activity in violation of Health and Safety Code section 11366.8, is not supported by substantial evidence and must therefore be reversed; and, alternatively, (2) his eight-month sentence on count 14, if affirmed, must be stayed pursuant to Penal Code section 654. Respondent argues count 14 is amply supported by evidence establishing defendant's liability under an aiding and abetting theory, but concedes the sentence should have been stayed.

We conclude defendant's conviction on count 14 is supported by substantial evidence, but that his sentence on that count must be stayed pursuant to Penal Code section 654. We therefore affirm the judgment of conviction as so modified and remand with directions to the superior court to prepare a modified abstract of judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize only those material facts relevant to our discussion of the narrow issues raised.

Starting in November 2005, Javier Salaiz, a special agent with the California Department of Justice, was in charge of a multi-jurisdictional and multi-organizational narcotics investigation focused on Steven Montes, the suspected head of an organization or "cell" operating in the United States and engaged primarily in the distribution of cocaine from Mexico. Defendant was identified as an associate of Montes, along with several other individuals. Wiretaps were authorized for various phone numbers from which a substantial amount of information related to the instant crimes was obtained. Some of the communications intercepted included telephone conversations between Montes and defendant.

On January 19, 2006, defendant, along with another suspected Montes associate, Enjobul King, were seen arriving at a house in Moreno Valley believed to be a "stash house" for Montes. A stash house is a term used by narcotics officers to refer to a residence, often a long-term rental, used by drug traffickers for the storage of narcotics. It was also suspected that defendant may have resided at the house at times.

2

The agents who were maintaining surveillance of the Moreno Valley house saw defendant arrive in a Nissan minivan on the morning of January 19. Several hours later, defendant and King drove off in the Nissan and had a discussion with a Hispanic man in the parking lot of a nearby restaurant. Defendant then drove back to the Moreno Valley house in the Nissan, and King arrived at the home in a Ford van. Defendant positioned the Nissan in the driveway in a manner that partially blocked the view of the garage and the Ford van, which King had parked nearly abutting the garage door. Defendant and King were seen, mostly from the waist up, moving back and forth between the garage and the Ford van, carrying packages. After several minutes of this activity, both men left again, with King driving the Ford van and defendant driving the Nissan. Defendant and King then returned to the same parking lot they had been seen at earlier and left the Ford van. An agent saw a Hispanic male come out of the restaurant and drive off in the Ford van. Shortly thereafter, the Nissan returned to the house with defendant driving and King in the passenger seat. The agents documenting this activity believed it to be a "vehicle switch" used for the transfer of narcotics.

Surveillance was maintained on the Ford van and it was followed to a location in Sylmar. It was eventually seized pursuant to a warrant, as were packages of marijuana, in excess of 650 pounds, which were found inside the van. Montes, defendant and King were not arrested at that time as the investigation of the Montes organization continued.

Approximately a month later, Agent Salaiz and his team intercepted additional phone calls that indicated a potentially large shipment of cocaine was going to be moved by Montes's organization. On February 22 and 23, 2006, several calls were intercepted between Montes and another individual, Samuel Viveros, in which they discussed getting a tractor-trailer ready for a shipment, preparing a compartment to hold the narcotics, the need to get a "legitimate load" as cover, and possible locations to meet.

Sometime near 8:00 p.m. on February 24, 2006, Agent Salaiz and his team determined the tractor-trailer had started to move. It was followed to a location in Rowland Heights where Montes and Viveros had agreed to meet. Montes was seen arriving in a white Dodge truck registered to defendant, and defendant also arrived in a Nissan minivan registered to him (it was a different vehicle from the Nissan previously

used by defendant and King in connection with the transfer of the marijuana). Defendant did not park the Nissan near the tractor-trailer, but at a nearby location. Agent Salaiz personally observed defendant in the Nissan as he arrived and parked, and also saw him get out of the vehicle for a period of time, before returning to the minivan and proceeding to the location where the transfer was eventually completed. During this time, a call was intercepted between Montes and defendant in which Montes told defendant they needed to leave the area because of too much "activity."

Agent Salaiz and the surveillance teams, including an agent conducting aerial surveillance, separately followed Montes, defendant and the tractor-trailer as they left the initial stop area, and ultimately relocated to a remote industrial park off of the 60 Freeway. When defendant's Nissan arrived and pulled up near the tractor-trailer, the driver of the Nissan was observed (by the agent conducting aerial surveillance) getting out of the minivan, talking to the driver of the tractor-trailer, and then both men were seen taking bags out of the minivan and putting them into the passenger side of the cab of the tractor-trailer. The driver of the Nissan then got back into the minivan and drove off, as Montes was pulling up in the truck.

An officer of the California Highway Patrol (CHP), working with a canine partner, was asked to assist the investigation by making a traffic stop of the tractor-trailer after it left the location. The canine partner was trained to alert to the odors of marijuana, cocaine, heroin, and methamphetamine. The CHP officer pulled the tractor-trailer over for a traffic infraction, and his canine partner alerted to an odor at the cab area of the vehicle. A search of the vehicle revealed duffle bags containing 175 kilograms of cocaine, packaged in individual kilogram packages, in a sealed compartment located under the bed in the sleeping berth of the cab. Viveros, who had been driving the tractor-trailer, was arrested. The cocaine was tested and confirmed to be cocaine (86.7 percent pure).

Agent Salaiz and his team continued to monitor calls pursuant to the wiretap authorization. A couple of days after Viveros was arrested, a call between defendant and Montes took place in which they discussed Viveros's arrest and speculated about whether they had been seen and why they had not also been arrested. After additional information

4

and evidence was obtained and organized, defendant, Montes and several other codefendants were arrested.

Defendant was charged by amended information with six felony counts: (1) conspiracy to unlawfully transport cocaine (Pen. Code, § 182, subd. (a)(1); count 1); (2) possession of marijuana for sale (Health & Saf. Code, § 11359; count 5); (3) transportation of marijuana (Health & Saf. Code, § 11360, subd. (a); count 6); (4) possession of cocaine for sale (Health & Saf. Code, § 11351; count 7); (5) transportation of cocaine (Health & Saf. Code, § 11352, subd. (a); count 8); and (6) false compartment activity (Health & Saf. Code, § 11366.8, subd. (a); count 14). It was specially alleged as to counts 1, 7 and 8 that the amount of cocaine illegally possessed and transported exceeded 80 kilograms in weight within the meaning of Health and Safety Code section 11370.4, subdivision (a)(6).[1] Defendant pled not guilty and denied the special allegations.

In March 2011, defendant's request to represent himself was granted. Standby counsel was appointed. The case proceeded to a jury trial in July 2012.

The jury found defendant guilty as charged. Defendant's motion for a new trial was denied. The court denied probation and sentenced defendant to an aggregate county jail term of 30 years 8 months, calculated as follows: the midterm of four years on count 8 (transportation of cocaine), the base count, plus a consecutive 25-year term for the weight enhancement; a concurrent midterm of three years on count 7 (possession for sale of cocaine), stayed pursuant to Penal Code section 654; a concurrent midterm of four years on count 1 (conspiracy to transport cocaine), stayed pursuant to section 654; a consecutive term of one year, one-third the midterm, on count 6 (transportation of marijuana); a concurrent midterm of two years on count 5 (possession for sale of marijuana), stayed pursuant to section 654; and a consecutive eight-month term, one-third

---

[1]    Charges were originally filed on October 31, 2008 against defendant and several co-defendants, including Montes. The codefendants ultimately entered into plea agreements, and the case proceeded to trial on the amended information against defendant only. None of the codefendants are parties to this appeal.

5

the midterm, on count 14 (false compartment activity). The court imposed various fines and fees, and awarded defendant total presentence custody credits of 4,665 days.

Defendant's motion for relief from failure to file a timely notice of appeal was granted by this court on January 24, 2013. This appeal followed.

**DISCUSSION**

**1.      Substantial Evidence Supports Defendant's Conviction on Count 14**

Defendant contends his conviction for false compartment activity relative to the transportation of cocaine is not supported by substantial evidence. Specifically, defendant argues there was no evidence he had any knowledge of any false compartment in the transport vehicle which was driven and controlled by other codefendants, and therefore there was insufficient evidence to establish guilt of the specific intent crime of false compartment activity. We are not persuaded.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--that is, evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) "We ' "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 509.) And, " '[a]lthough we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

In order to prove a defendant guilty as a perpetrator of false compartment activity pursuant to Health and Safety Code section 11366.8, subdivision (a), the prosecution must establish the defendant "possessed, used, or controlled the false compartment with the specific intent to 'store, conceal, smuggle, or transport a controlled substance.'

6

(§ 11366.8(a).)" (*People v. Arias* (2008) 45 Cal.4th 169, 183.)  It is undisputed there was no direct evidence of express knowledge by defendant of the existence of the false compartment in the tractor-trailer.  The record plainly shows only Montes and Viveros were overhead discussing the modification of the tractror-trailer to transport the cocaine and that Viveros had arranged for that to be done.

But, the prosecutor presented evidence and argued defendant's liability on count 14 under an aiding and abetting theory.  " 'To prove that a defendant is an accomplice . . . the prosecution must show that the defendant acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." [Citation.] When the offense charged is a specific intent crime, the accomplice must "share the specific intent of the perpetrator"; this occurs when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." [Citation.]' [Citation.]" (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118.)

The record establishes defendant was observed by several different agents, including Agent Salaiz, driving, on February 24, 2006, in a coordinated fashion in communication with Montes until arriving at the final transfer location (having rejected the initial location due to excess activity), and assisting Viveros in transferring a large quantity of cocaine (175 kg) in duffle bags from defendant's minivan to the cab of the tractor-trailer where the false compartment was located.  Defendant was also heard talking to Montes on the phone after Viveros was arrested and the cocaine seized, speculating about whether they had been seen and why they had not been arrested.  This is substantial direct and circumstantial evidence of defendant's participation in a criminal conspiracy to transport a large quantity of cocaine, and the jury found defendant guilty of same in count 1.

Moreover, there was ample circumstantial evidence defendant had acted pursuant to that conspiracy with knowledge of Montes's criminal purpose to transport a sizeable quantity of cocaine, and reasonable inferences that the cocaine would be hidden from view in order to avoid detection.  Further, there was substantial evidence defendant gave

7

aid to Montes in facilitating the perpetration of that offense by directly participating in the transfer. (See *People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 743 ["The 'act' required for aiding and abetting liability need not be a substantial factor in the offense. ' "Liability attaches to anyone 'concerned,' however slight such concern may be, for the law establishes no degree of the concern required to fix liability as a principal." ' "]; *People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [" 'factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense' "]; *People v. Nguyen* (1993) 21 Cal.App.4th 518, 531-532 [perpetrator need not expressly communicate criminal purpose that is apparent from the circumstances as "[a]iding and abetting may be committed 'on the spur of the moment,' . . . as instantaneously as the criminal act itself"].)

The evidence of defendant's mental state was circumstantial, but such evidence may be properly credited and relied upon by the jury in finding the requisite specific intent. " 'Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction. [Citations.]' [Citation.] A jury may infer a defendant's specific intent from the circumstances attending the act, the manner in which it is done, and the means used, among other factors." (*People v. Ferrell* (1990) 218 Cal.App.3d 828, 834.)

The deference we accord the jury's findings when tasked with a substantial evidence question is the same whether direct or circumstantial evidence is involved. (*People v. Catlin* (2001) 26 Cal.4th 81, 139 [" ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' "]; see also *People v. Bolin* (1998) 18 Cal.4th 297, 331 [Reversal for lack of substantial evidence is "unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' "].)

We see no basis for disturbing the jury's findings on count 14.

## 2.     Defendant's Sentence on Count 14 Should Have Been Stayed

Defendant argues, in the alternative, that if his conviction on count 14 is affirmed, the eight-month consecutive sentence imposed must be stayed pursuant to Penal Code section 654.  Respondent concedes the sentence should have been stayed.  We agree.

Penal Code section 654, subdivision (a) provides in relevant part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Section 654 " ' "precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts.  'Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor.'  [Citations.]  '[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.'  [Citation.]" [Citation.]'  [Citations.]"  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

The parties agree the record contains no evidence of a separate intent or objective in using the false compartment in the transport vehicle other than to facilitate the transportation of the cocaine.  The record does not contain substantial evidence supporting the trial court's implied finding that the use of the false compartment and the transportation of the cocaine arose from a different set of operative facts.  (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368 [trial court's findings on whether a defendant harbored separate intents will be upheld if supported by substantial evidence].)

Defendant was punished on count 8 for the transportation of the cocaine (four-year midterm) plus the consecutive term for the weight enhancement (25-year term).  The consecutive eight-month term imposed on count 14 for false compartment activity, arising from the same set of operative facts, should have been stayed.  Defendant's sentence shall be modified to so reflect.

Finally, our review of the record has disclosed a typographical error regarding the weight enhancement on the abstract of judgment.  The weight enhancement was only pled as to counts 1, 7 and 8, and the verdict forms show corresponding true findings by

9

the jury on the enhancement as pled.  At the sentencing hearing, the court imposed the enhancement as to "count 8 only", the base term.  However, the abstract of judgment erroneously reflects that the 25-year term for the enhancement was imposed as to *count 14*.  The court's oral pronouncement of sentence controls.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186 ["An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize."].)  The typographical error in the abstract of judgment must be modified to correctly reflect the court's pronouncement of sentence.

## DISPOSITION

Defendant and appellant Derwin L. Webster's sentence is modified as follows:  on count 14, the eight-month term is stayed pursuant to Penal Code section 654.  Further, the abstract of judgment shall be modified to reflect the imposition of the 25-year term for the enhancement pursuant to Health and Safety Code section 11370.4, subdivision (a)(6) as to count 8, not count 14.  The judgment of conviction is otherwise affirmed in all other respects.  The superior court is directed to prepare a modified abstract of judgment consistent with this opinion and transmit same forthwith to the Department of Corrections and Rehabilitation.

GRIMES, J.

We concur:

BIGELOW, P. J.

FLIER, J.

10