Filed 9/2/15  P. v. Ramirez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>CHARLES THOMAS RAMIREZ, JR.,<br><br>　　Defendant and Appellant. | G049845<br><br>(Super. Ct. No. 11NF0916)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James A. Stotler, Judge.  Affirmed.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, Deputy Attorney General, for Plaintiff and Respondent.

\*　　　　\*　　　　\*

A jury convicted defendant Charles Thomas Ramirez, Jr., of first degree murder (Pen. Code, § 187, subd. (a))[1] and found true the enhancement he personally discharged a firearm causing death (§ 12022.53, subd. (d)). The court sentenced defendant to a total prison term of 50 years to life.[2]

Defendant contends the court erred by instructing the jury with CALCRIM No. 334, which defines the term "accomplice." We disagree and affirm the judgment.

FACTS

Marc Luna testified for both the prosecution and the defense. Luna testified for the prosecution pursuant to an agreement that if he truthfully testified consistently with his proffer statement, the first degree murder charge against him would be dismissed and he would serve a four-year prison term for being an accessory after the fact.[3]

*The Prosecution's Case*

1. Luna's testimony for the prosecution.

Luna lived in a house with his wife, her parents, and defendant (Luna's wife's brother). The house was in an area claimed by the Fullerton Tokers Town gang

---

[1]     All statutory references are to the Penal Code.

[2]     The court sentenced defendant to a term of 25 years to life for the murder conviction and a consecutive term of 25 years to life for the enhancement. Pursuant to section 1385, the court exercised its discretion to strike defendant's prior petty theft conviction.

[3]     The information also charged codefendant Luna with first degree murder and acting as an accessory after the fact.

2

(Tokers gang). Prior to the date of the shooting, Tokers gang members had "hassled" Luna and, on one occasion, had beaten him up pretty badly.

On March 17, 2011, around 9:00 p.m., Luna was walking home from a Narcotics Anonymous meeting in Fullerton. He regularly attended such meetings. On this occasion, as he walked down an alley, three white men demanded to see his phone, approached him, and pushed him to the ground. Luna got up and ran home.

Upon arriving home, Luna realized he did not have his cell phone. Luna told his wife he had to go back and get his phone. Defendant went with Luna, although Luna had not asked him to do so.

Luna and defendant walked back to the area where Luna had lost his cell phone. After finding the phone, defendant asked Luna to walk with him up the dark alleyway.

After walking a little further, Luna saw two Hispanic men who appeared to be changing a tire on a minivan. Luna told defendant the Hispanic men were not the same persons who had attacked him. Defendant acknowledged he knew this, but said, "I've got to get at these fools real quick."

Defendant whistled and went to talk to the men. Luna heard defendant say, "Homey," in an "aggressive" tone. Luna heard one of the men laugh in defendant's face. Defendant punched the young man in the face, knocking him to the ground. The victim grabbed a tire iron and tried to run. Defendant pulled out a gun and shot the victim. The victim fell.

Luna ran home. Defendant arrived there a few minutes later. Defendant told Luna, "Don't say shit, dawg." Luna did not report the incident to the police.

Later, in jail, when Luna asked defendant why he had shot the victim, defendant replied that he had "just meant to shoot him in the ass."

2.  Other prosecution evidence.[4]

A forensic pathologist testified the victim died of a gunshot wound to the head and was shot from over two feet away.

*Defense*

1.  Defendant's testimony.[5]

Defendant testified on his own behalf.  On the night of the shooting, Luna had come home and told defendant that Tokers gang members had "got [him] again." Defendant noticed blood trickling down Luna's cheek.  Defendant knew that Luna had previously been attacked twice by the Tokers gang.

That night, defendant carried a gun for protection because he and his family members had been stopped or hurt by Tokers gang members many times in the past. Defendant was *not* carrying the gun for retaliation.

When defendant and Luna reached the alley, defendant was aware that Tokers gang members sometimes hung out there.  Defendant hoped to reach a "peaceful" agreement where "this could stop happening," because defendant's parents owned their house and did not plan to move soon.  Defendant felt sad and bad for Luna, who kept getting hurt and was now bleeding.

Defendant saw two young men in the alley.  Defendant whistled. Defendant asked them where they were from.  The victim replied they were from "Tokers Town."  Defendant said, "You guys keep jumping my brother-in-law . . . .  It's got to stop, man."  Defendant gestured toward Luna, who was standing around 10 or 15 feet

---

[4]     Other witnesses testified for the People, including the victim's companion who saw the shooting.

[5]     Other witnesses testified for the defense, including Luna.

4

behind defendant since Luna was scared. The victim may have responded sarcastically or even chuckled.

Defendant hit the victim. The victim picked up a crowbar. Defendant, in fear for his life, shot at the victim's butt area or the back of his thighs.

DISCUSSION

*The Court Properly Instructed the Jury with CALCRIM No. 334*

Defendant contends the court erred by instructing the jury with CALCRIM No. 334, because insufficient evidence showed Luna could have been an accomplice. Defendant argues the error was prejudicial because the instruction "implicitly told the jury that a crime had been committed which refuted [defendant's] claim of self defense."

CALCRIM No. 334 applies when there is a dispute about whether a witness is an accomplice to the crime charged against the defendant. The instruction defines the term "accomplice," and instructs the jurors they must decide whether a particular witness was an accomplice.[6] CALCRIM No. 334 then states that, if the jury decides a witness was an accomplice, then the jury may use the accomplice's testimony to convict the defendant only if the testimony is supported by independent evidence which the jury believes and which tends to connect the defendant to the commission of the crime.

---

[6] Defendant contends the following language of CALCRIM No. 334 presupposes, and thus implies to a jury, that the defendant did in fact commit a crime: "A person is an accomplice if he or she is subject to prosecution for the identical crime charged against the defendant. Someone is subject to prosecution if: He or she personally committed the crime; or he or she knew of the criminal purpose of the person who *committed the crime*; and he or she intended to, and did in fact, aid, facilitate, promote, encourage, or instigate the *commission of the crime* or participate in a criminal conspiracy to commit the crime." (Italics added.)

The court determined substantial evidence suggested Luna could be an accomplice and therefore instructed the jury with CALCRIM No. 334.[7]

A person is an accomplice if he or she aids and abets a crime charged against a defendant. (§ 1111; *People v. Houston* (2012) 54 Cal.4th 1186, 1223.) To aid and abet a crime, a person (1) must have *knowledge* of the perpetrator's criminal purpose, and (2) must act with an *intent* to commit, or encourage or facilitate commission of, the crime. (*Id.* at p. 1224.) A witness charged with the same crime as the defendant, and who has been granted immunity, is not necessarily an accomplice. (*People v. Stankewitz* (1990) 51 Cal.3d 72, 90.)

Aiding and abetting must take place *before* and/or *during* the defendant's commission of a crime. It may be committed "'on the spur of the moment,' that is, as instantaneously as the criminal act itself. [Citation.]" (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 532.) A person's conduct *after* the commission of a crime does not

---

[7] During the finalization of the instructions, the trial court and counsel discussed whether CALCRIM No. 334 or CALCRIM No. 335 (or neither of them) should be given. CALCRIM No. 335 applies when a witness is indisputedly an accomplice to a crime that was indeed committed, and instructs the jury that it may use the accomplice's testimony to convict the defendant only if such testimony is supported by independent evidence which the jury believes and which tends to connect the defendant to the commission of the crime. The prosecutor argued CALCRIM No. 334 should be given because, in the prosecution's view, Luna was not an accomplice. Defense counsel argued neither instruction should be given. She argued CALCRIM No. 334 "would be confusing the way it's worded." Subsequently, the prosecutor changed his position, stating that although the People believed CALCRIM No. 334 was the most accurate instruction, the People did not oppose the giving of CALCRIM No. 335 if the defense wanted it. Defense counsel had concerns about both instructions, but as between the two, preferred CALCRIM No. 335 over CALCRIM No. 334. Defense counsel objected on the record to the giving of CALCRIM No. 334. The court found the evidence was insufficient to show Luna was an accomplice *as a matter of law* and therefore declined to give CALCRIM No. 335, but determined sufficient evidence existed to support the giving of CALCRIM No. 334.

6

result in accomplice liability, but might implicate him or her as an accessory. (*People v. Horton* (1995) 11 Cal.4th 1068, 1116.)

"When a jury receives substantial evidence that a witness who has implicated the defendant was an accomplice," the trial court must sua sponte instruct the jurors on accomplice testimony. (*People v. Houston*, *supra*, 54 Cal.4th at p. 1223.) The court should instruct the jury with CALCRIM No. 334 when the facts concerning the witness's complicity "'are disputed or susceptible of different inferences.'" (*People v. Cisneros* (1973) 34 Cal.App.3d 399, 413 [as to CALJIC instructions on accomplice testimony].) In contrast, the court should give CALCRIM No. 335 when the witness is an accomplice as a matter of law. And, "'where, as a matter of law, the witness is not an accomplice, the court does not err in refusing to charge that he is or in refusing to submit the issue to the jury.'" (*Cisneros*, at p. 413.)

We review de novo defendant's contention the court erred by instructing the jury with CALCRIM No. 334. (*People v. Alvarez* (1996) 14 Cal.4th 155, 218.) But we review for substantial evidentiary support the court's finding that substantial evidence implicated Luna as an accomplice. (*People v. Boyer* (2006) 38 Cal.4th 412, 466-467.) Evidence sufficient to support a court's giving of an instruction sua sponte is "evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive" (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8), as compared to "'minimal and insubstantial'" evidence (*id*. at p. 201 [concerning instruction on murder in unreasonable self-defense]).

Defendant contends the evidence is insufficient to show Luna was an accomplice. He asserts there is no evidence Luna (1) asked him to accompany Luna to retrieve Luna's phone, (2) encouraged him to confront the victim, (3) knew what defendant intended to do, (4) came closer than about 10 feet away from the encounter, and/or (5) was involved in the confrontation.

7

The absence of direct evidence of any or all of the foregoing is not dispositive. Luna was an accomplice if he "in any way, directly or indirectly, aided [defendant], with knowledge of [defendant's] wrongful purpose." (*In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094.) Circumstantial evidence may show the requisite knowledge and intent. (*People v. White* (2014) 230 Cal.App.4th 305, 319.) There is no requirement that the perpetrator expressly communicate his criminal purpose to the accomplice. (*People v. Nguyen*, *supra*, 21 Cal.App.4th at p. 531.) "Factors to be considered by the trier of fact in determining 'whether one is an aider and abettor include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime.'" (*People v. Garcia* (2008) 168 Cal.App.4th 261, 273.) Luna's conduct met all five factors suggesting aiding and abetting.

The following substantial evidence supported the court's determination that Luna might have instigated and aided defendant's murder of the victim, and might have known of defendant's purpose. Luna had previously been beaten up by Tokers gang members. Luna's and defendant's home was located in an area claimed by the Tokers gang, and defendant and his family had been harassed and hurt many times by Tokers gang members. On the night of the shooting, Luna came home with a bleeding cheek and told defendant that Tokers gang members had attacked him again. With defendant at his side, Luna headed back to the same alley where he had just been attacked by three men. After finding his phone, Luna did not immediately go home. Instead, he walked with defendant further down the dark alley. Luna remained at the scene after he and defendant encountered two young men. Luna remained there after defendant punched the victim in the face. He remained there during the shooting. Only then did he flee the scene. This evidence was sufficient to show (1) Luna knew of defendant's intent to stop the Tokers gang from harassing Luna, defendant, and defendant's family members, by sending the gang a serious and violent signal, and (2) Luna instigated and aided the crime by telling

8

defendant the Tokers gang had assaulted Luna again — thereby triggering defendant's anger toward the Tokers gang, as well as defendant's protective instincts toward Luna — and by backing up defendant in the criminal plan.

Defendant relies on *People v. Cisneros*, *supra*, 34 Cal.App.3d 399, disapproved on other grounds in *People v. Ray* (1975) 14 Cal.3d 20, 30, footnote 8, and *People v. Hoover* (1974) 12 Cal.3d 875, 880, but in both of those cases, the evidence was insufficient to show the witness at issue was an accomplice. In *Cisneros*, one alleged accomplice did not know or act in concert with the defendant. (*Cisneros*, at p. 414.) The other alleged accomplice handed the defendant a gun upon the defendant's request, but there was no evidence indicating he "had any idea of the purpose for which [the] defendant wanted his gun." (*Id.* at p. 415.) In *Hoover*, the alleged accomplice was an undercover F.B.I. agent who "had no inkling that the shooting was about to occur" and turned over the gun to F.B.I. superiors after the incident. (*Hoover*, at p. 881.)

Defendant also contends that *People v. Jackson* (1954) 42 Cal.2d 540, should guide this court's decision to find CALCRIM No. 334 was inappropriately given to the jury. *Jackson* states, "It has long been the law that it is error to charge the jury on abstract principles of law not pertinent to the issues in the case. [Citation.] The reason for the rule is obvious. Such an instruction tends to confuse and mislead the jury by injecting into the case matters which the undisputed evidence shows are not involved." (*Jackson*, at pp. 546-547.) However, since there was substantial evidence from which a jury could conclude that Luna was an accomplice, CALCRIM No. 334 addresses an issue pertinent to the case. Indeed, *Jackson* further explains, "But if the evidence discloses facts pertinent to the case . . . the court . . . must instruct the jury with reference to the applicable law when requested by either party and may do so even though no request has been made." (*Jackson*, at p. 547.) In this case, the court was required to give CALCRIM No. 334 sua sponte. Thus, *Jackson* supports the notion that the trial court correctly instructed the jury with CALCRIM No. 334.

In sum, the evidence supports the giving of the accomplice instruction. Because we conclude the trial court did not err in giving CALCRIM No. 334, we need not address defendant's contention the alleged error was prejudicial because "the instruction improperly encouraged the jury to find that [defendant] had committed a crime and therefore reject [his] claim of self defense."[8]

## DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

FYBEL, J.

---

[8] To the extent defendant intends to raise a constitutional challenge to CALCRIM No. 334, he has waived the challenge by failing to adequately brief it with reasoned argument and legal authority. (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Stanley* (1995) 10 Cal.4th 764, 793.) To the extent defendant intends to argue the instruction was confusing as given in this case, defense counsel below failed to request a modification of CALCRIM No. 334, thereby forfeiting the issue on appeal. (*People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1331 [trial court has no sua sponte duty to give clarifying or amplifying instructions].)