Filed 12/12/23  P. v. Urquilla CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DOUGLAS URQUILLA,<br><br>Defendant and Appellant. | B321417<br><br>(Los Angeles County Super. Ct. No. BA100645) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1994, defendant Douglas Urquilla was convicted of murdering two people with a fellow gang member to cover up the murders of two other people. He was sentenced to two consecutive terms of life without the possibility of parole. In 2019, he petitioned for resentencing under Penal Code former section 1170.95 (now section 1172.6), based on changes to the law of murder made by Senate Bill No. 1437 (2017–2018 Reg. Sess.).[1] The trial court issued an order to show cause and held an evidentiary hearing, then denied the petition. We conclude there is substantial evidence that defendant acted as a direct aider and abettor. We therefore affirm.

## FACTS

### 1. The Underlying Crime[2]

On July 6, 1994, Martin Jasso and Erika Briseno were shot and killed. Jasso, a member of the Harpys criminal street gang, was killed by defendant, a member of the same gang. Briseno was killed by a man accompanying defendant. Some evidence indicated that defendant's companion was Rudolfo Corrales, also a Harpys gang member. The Jasso and Briseno murders appear to have been related to Jasso's perceived cooperation with the police on two other murders Corrales had committed three days earlier.

On the evening of July 6, Harpys member Aron Nunez, who was driving a red car, pulled up next to defendant, who was

---

[1] All statutory references are to the Penal Code.

[2] These facts are taken from the opinion and the record in defendant's direct appeal. (*People v. Urquilla* (April 16, 1999, B119484 [nonpub. opn.].)

2

standing on the street.[3]  Defendant got into the car and said "there were some enemies."  The two drove through the neighborhood and ultimately stopped next to a turquoise car containing other Harpys members, including Corrales.  "Enemies being in the hood" was discussed among the occupants of the cars.  Corrales then exited the turquoise car and got into the backseat of the red car.  Corrales and defendant were both armed.

The red car proceeded down an alley; Corrales told driver Nunez to stop, and Corrales got out of the car.  As Nunez drove down the alley, he and defendant spotted Jasso and Briseno walking together.  The red car pulled up next to the victims, and defendant "pointed a gun out the window at Jasso and fired two shots."  Jasso and Briseno fled in different directions; defendant ran after Jasso.  Briseno ran down the alley towards where Corrales had exited the car, and Corrales shot and killed her.  Briseno died of four gunshot wounds.  Corrales then ran to defendant, and together they approached Jasso, who was lying on the ground.  Two shots rang out, and Jasso was killed.  It was not clear whether defendant or Corrales fired these final shots.  An autopsy revealed that Jasso suffered five gunshot wounds, four of which were fatal.

## 2.    *Prosecution, Conviction, and Direct Appeal*

In 1995, the People charged defendant with two counts of

---

[3]    Nunez agreed to testify against defendant at trial in exchange for a plea deal, but failed to appear.  Over defense objection, the court concluded that Nunez was unavailable and allowed the prosecutor to read his preliminary hearing testimony into the record.

murder (§ 187, subd. (a)), with two armed principal enhancements (§ 12022, subd. (a)(1)) and a multiple-murder special circumstance (§ 190.2, subd. (a)(3)).[4]

The case proceeded to trial in 1997, and at the close of evidence, the People argued defendant was "the actual killer or one of the actual killers" of Jasso; defendant aided and abetted Jasso's killing, and Briseno's death was a natural and probable consequence of that offense; and defendant "aided and abetted in the killing of Briseno . . . ." Relevant here, defendant's jury was instructed on direct liability as an aider and abettor (CALJIC No. 3.01) and aider and abettor liability for murder as a natural and probable consequence (CALJIC No. 3.02).

The jury found defendant guilty of two counts of first degree murder and found true the armed principal allegations and the multiple-murder special circumstance. The trial court sentenced defendant to two consecutive terms of life in prison without the possibility of parole, plus one year for each armed principal enhancement.

Defendant appealed, and we affirmed the conviction in an unpublished opinion (*People v. Urquilla*, *supra*, B119484).

### 3. 1172.6 Petition, Summary Denial, and Appeal

In 2019, defendant filed a petition for resentencing under former section 1170.95 (now § 1172.6).[5] The trial court summarily denied the petition without appointing counsel or

---

[4]    The information contained the additional special circumstance that defendant murdered Jasso to prevent his testimony as a witness to a crime (§ 190.2, subd. (a)(10)), but this charge was ultimately stricken.

[5]    For clarity, we will use section 1172.6.

4

holding a hearing.  Defendant appealed, and this court affirmed the summary denial as to the Jasso murder, but reversed and remanded with respect to the Briseno killing.  (*People v. Urquilla* (Nov. 16, 2020, B298404) [nonpub. opn.].)

### 4.    1172.6 Proceedings After Remand

On May 27, 2022, following remand and briefing, the trial court conducted an evidentiary hearing.  Neither party introduced new evidence.  Relying on the trial record, the court denied defendant's petition, finding "the People have sustained their burden of proving each . . . element of this case on two theories:"  First, "direct aiding and abetting, either with express or implied malice," and second, "a conspiracy to commit murder, and that would contemplate any possible witness to the case."

Defendant filed a timely notice of appeal.

### DISCUSSION

Defendant argues that the evidence is insufficient to support the trial court's finding beyond a reasonable doubt that defendant aided and abetted Briseno's murder.

### 1.    Section 1172.6

Murder is "the unlawful killing of a human being . . . with malice aforethought."  (§ 187, subd. (a).)  Malice may be express or implied.  (§ 188, subd. (a).)  Express malice is the intent to kill; implied malice exists "where the defendant . . . acted with conscious disregard that the natural and probable consequences of [his or her] act or actions were dangerous to human life." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 197.)  Although malice is an element of murder, when defendant was convicted, the law allowed defendants who did not act with malice to be liable for murder under certain circumstances.

After the ameliorative changes in the law effected by Senate Bill No. 1437 (Stats. 2018, ch. 15), to convict a defendant of murder, the prosecution must prove he acted with malice—except under the narrowed felony-murder rule set forth in section 189, subdivision (e)—and malice may not be imputed based solely on an individual's participation in a crime (§ 188, subd. (a)(3)), thereby eliminating the natural and probable consequences doctrine. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843, 847 (*Gentile*).)

Under section 1172.6, a person convicted under one of the now-invalid theories of murder may petition the sentencing court to vacate the conviction and to resentence defendant on any remaining counts. (*People v. Lewis* (2021) 11 Cal.5th 953, 957 (*Lewis*).) If the petitioner makes a prima facie showing that he or she falls within the provisions of section 1172.6 and is eligible for relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to grant the petition and resentence the petitioner. (§ 1172.6, subds. (c) & (d).)

At the evidentiary hearing, which the trial court held here, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by changes to Section 188 and 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) The court's role at the hearing is to act as an independent fact finder and determine the issues in the first instance." (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 123.) The court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law." (§ 1172.6, subd. (d)(3).)

6

### 2. *Standard of Review*

We review a trial court's denial of a section 1172.6 petition after an evidentiary hearing for substantial evidence. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951 (*Vargas*).) In assessing the sufficiency of the evidence, we review the entire record to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Ibid.*)

In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We may not reweigh the evidence or resolve evidentiary conflicts. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) The same standard applies where the conviction rests primarily on circumstantial evidence. (*People v. Thompson* (2010) 49 Cal.4th 79, 113.)

### 3. *Direct Aiding and Abetting is Still a Valid Theory of Murder*

Although section 1172.6 eliminated several forms of accomplice liability for murder, accomplices may still be convicted of murder as direct aiders and abettors. (*People v. Reyes* (2023) 14 Cal.5th 981, 990; see also *People v. Offley* (2020) 48 Cal.App.5th 588, 595–596 (*Offley*).) That is because to convict a defendant as a direct aider and abettor, the trier of fact must find that he or she acted with malice, either express or implied.

7

(*Vargas*, *supra*, 84 Cal.App.5th at p. 953; *Gentile*, *supra*, 10 Cal.5th at p. 848.)

Direct aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's mens rea. (*People v. Powell* (2021) 63 Cal.App.5th 689, 712–713 (*Powell*).) "[P]roof of aider and abettor liability requires proof in three distinct areas:  (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime."  (*People v. Perez* (2005) 35 Cal.4th 1219, 1225; *Vargas*, *supra*, 84 Cal.App.5th at pp. 953–954.)

Whether a defendant aided and abetted a charged crime is judged under the totality of the circumstances.  (*People v. Morga* (1969) 273 Cal.App.2d 200, 207.)  "Factors to be considered by the trier of fact in determining 'whether one is an aider and abettor include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime.' "  (*People v. Garcia* (2008) 168 Cal.App.4th 261, 273 (*Garcia*); *Vargas*, *supra*, 84 Cal.App.5th at p. 955.)  Nevertheless, "[m]ere presence at the scene of a crime is not sufficient to constitute aiding and abetting, nor is the failure to take action to prevent a crime . . . ."  (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 529–530.)

Likewise, a conviction may not be based solely on defendant's knowledge of what the perpetrator plans to do. (*People v. Horton* (1995) 11 Cal.4th 1068, 1115 ["knowledge that a crime might be committed by defendant in the future did not

8

amount to aiding and abetting the commission of that prospective crime"].)  The prosecution must also prove that the aider and abettor "does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of" the target offense.  (CALCRIM No. 401.)  "Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction."  (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.)

### 4.    *Substantial Evidence Supports the Trial Court's Finding That Defendant Directly Aided and Abetted Briseno's Murder*[6]

The evidence presented at trial, viewed in the light most favorable to the prosecution, was sufficient to establish that defendant acted with express malice in that it showed (1) a plan to kill both victims, and (2) a motive to kill Briseno as a potential witness to Jasso's murder.

The evidence showed that defendant and Corrales planned with other Harpys members to trap and kill Jasso and Briseno.  Defendant mentioned "enemies" (plural) upon entering the red car, which undermines defendant's assertion that he was only interested in killing Jasso.  The occupants of the red and

---

[6]    The trial court also found that the prosecution had proven all the elements of conspiracy to commit murder.  Defendant observes, and the People do not dispute, that the court's finding in this regard is not one contemplated by section 1172.6.  We assign no meaning to the trial court's reference to "conspiracy" beyond its function of reiterating the court's finding that the People showed defendant acted "either with *express* or implied malice."  (Italics added.)  (See *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 642 ["Conspiracy to commit murder may be based only on express malice, i.e., intent to kill"].)

turquoise cars discussed the "enemies in the hood." Corrales then left the turquoise car, bringing his gun with him, and got into the red car—actions consistent with a plan to kill the "enemies."

The red car drove down an alley, and, at some point, Corrales alighted from the red car; defendant was driven further down the alley until he happened upon Jasso and Briseno walking next to each other. At that point, defendant pulled out a gun and shot at Jasso, which constituted the requisite actus reus as it caused Briseno to flee toward Corrales, who was waiting to shoot her. After Corrales killed Briseno, defendant and Corrales reunited to ensure that Jasso was also dead. (See *Garcia*, *supra*, 168 Cal.App.4th at p. 273 ["conduct before and after the crime" and "companionship" are factors that may support aider and abettor liability].)

Not only was the evidence substantial to show defendant acted as part of a plan to kill both victims, but it also showed a motive to kill Briseno as a potential witness to Jasso's murder. The evidence showed that defendant knew Briseno was with Jasso, but nonetheless carried out the plan to shoot Jasso. Indeed, defendant shot at him while Briseno stood right next to Jasso. The record showed Corrales and defendant were motivated to kill Jasso because he witnessed Corrales kill two people in the days prior and was seen by other Harpys members speaking with police in the resulting investigation. This purpose in killing Jasso—which is grounds for the witness-murder special circumstance (§ 190.2, subd. (a)(10))—strongly suggests that defendant and Corrales had no intention of letting Briseno live after having witnessed the killing of her uncle.

### *DISPOSITION*

The order denying defendant's section 1172.6 petition is affirmed.


                                        RUBIN, P. J.

WE CONCUR:


BAKER, J.


MOOR, J.