Filed 2/10/25  P. v. Gonzalez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ARTURO GONZALEZ,<br><br>    Defendant and Appellant. | B333270<br><br>(Los Angeles County<br>Super. Ct. No. PA081411) |

APPEAL from an order of the Superior Court of Los Angeles County, Hayden Zacky, Judge.  Affirmed.

Elizabeth K. Horowitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Michael C. Keller, Deputy Attorneys General for Plaintiff and Respondent.

Arturo Gonzalez appeals the trial court's order denying his petition for vacatur of his conviction of first degree murder and resentencing pursuant to section 1172.6. The trial court denied Gonzalez's petition because he failed to make a prima facie showing that he was eligible for relief. We affirm the trial court's order.

## PROCEDURAL HISTORY

In 2015, Gonzalez was charged with the murder of a fellow prison inmate after he participated in "disciplining" the victim for failing to follow gang regulations. Gonzalez and two or three other inmates beat the victim, which resulted in his death.

At trial, Gonzalez was prosecuted for murder under three theories. The prosecutor argued that Gonzalez was either guilty as (1) a direct perpetrator of malice murder; (2) an aider and abettor of malice murder; or (3) an aider and abettor of an assault with force likely to cause great bodily injury that resulted in murder as a natural and probable consequence of the assault. The prosecutor emphasized that the evidence showed that Gonzalez committed first degree malice murder, but that alternatively the jury could find Gonzalez guilty of second degree murder under the natural and probable consequences doctrine.

The trial court instructed the jury on aiding and abetting general principles (CALCRIM No. 400), aiding and abetting intended crimes (CALCRIM No. 401), natural and probable consequences (CALCRIM No. 403), homicide (CALCRIM No. 500), first or second degree murder with malice aforethought (CALCRIM No. 520), first degree murder (CALCRIM No. 521),

2

and assault likely to cause great bodily injury (CALCRIM No. 875).

During deliberations, the jury asked for clarification regarding CALCRIM No. 520, specifically the portion of the instruction defining implied malice.  The jurors indicated that they were in agreement that Gonzalez committed murder but were struggling to reach consensus regarding the degree of murder.  After the trial court responded to the jury's final question regarding implied malice, the jurors returned to deliberations and reached a verdict.

The jury convicted Gonzalez of first degree murder.  (Pen. Code,[1] § 187, subd. (a); count 1.)  The jury also found true a gang enhancement pursuant to section 186.22, subd. (b)(1)(C).  In a separate bench trial, Gonzalez admitted that he had served four prior prison terms within the meaning of section 667.5, subdivision (b), two of which he served concurrently.  The trial court sentenced Gonzalez to 25 years to life in prison for the murder, plus a one-year term for the concurrent prison priors. The court imposed a minimum parole eligible date of 15 years pursuant to the gang enhancement.  The court struck the remaining two prison priors in the interest of justice.

Gonzalez appealed, and the judgment was affirmed by a different panel of this court in an unpublished opinion.  (*People v. Gonzalez* (Jan. 20, 2017, B271270 [nonpub. opn.]).  As pertinent here, on appeal Gonzalez argued that the trial court's omission of certain portions of the pattern instructions for CALCRIM No. 520 and CALCRIM No. 521 in combination with the trial court's responses to the jury's questions erroneously led the jury to believe that any murder committed with express malice (intent to

---

[1] All further statutory references are to the Penal Code.

kill) was murder in the first degree and that only the commission of aiding and abetting an act the natural and probable consequences of which are death was murder in the second degree. (*Id.* at *7-9.) Another panel of this court concluded that the trial court did not err in instructing the jury under CALCRIM No. 520 and CALCRIM No. 521. (*Id.* at *7-8.) The panel held that it was "abundantly clear that [Gonzalez could] only be found guilty of first degree murder if it is proven that [he] 'acted willfully, deliberately, and with premeditation,' and not merely intentionally." (*Id.* at *8.) The panel held that Gonzalez forfeited his challenge to the trial court's responses to the jury's questions by consenting to the court's responses at trial, and also observed that "the trial court's explanations relating to the elements of either first or second degree murder were accurate statements of law based in whole or in part upon the applicable CALCRIM model instruction." (*Id.* at *8-9.)

In 2021, Gonzalez petitioned for vacatur of his murder conviction and resentencing under former section 1170.95 (now § 1172.6)[2], which the People opposed. Gonzalez was appointed counsel and filed a reply.

At a hearing in 2023, the trial court denied the petition, finding that Gonzalez was prima facie ineligible for relief. The court found the jury had been instructed that if it found Gonzalez guilty of murder under the natural and probable consequences doctrine, it was murder in the second degree. The jury convicted Gonzalez of first degree murder, so it could not have based its decision on the natural and probable consequences doctrine.

---

[2] Prior to filing his section 1170.95 petition, Gonzalez filed a petition for writ of habeas corpus on the same basis, which the trial court later denied as duplicative.

4

# DISCUSSION

## A. *Section 1172.6*

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)  In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95 [(now § 1172.6)], which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)

Effective January 1, 2022, Senate Bill No. 775 amended former section 1170.95.  (Stats. 2021, ch. 551, § 1).  As a result of these amendments, current section 1172.6 provides that "person[s] convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances.  (§ 1172.6, subd. (a).)  If a petitioner makes a prima facie showing of eligibility under section 1172.6, the trial court must issue an order to show cause and hold an evidentiary

5

hearing. (*People v. Lewis, supra,* 11 Cal.5th at p. 971.) A petitioner is ineligible for relief as a matter of law if the record of conviction conclusively establishes that he or she was not convicted under any theory of liability affected by Senate Bill 1437's amendments to the law of murder. (*People v. Curiel* (2023) 15 Cal.5th 433, 450 (*Curiel*); *People v. Mancilla* (2021) 67 Cal.App.5th 854, 866–867.)

We independently review a trial court's determination of whether a petitioner has made a prima facie showing. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

**B.    *Analysis***

At the time of Gonzalez's trial, an aider and abettor could not be convicted of first degree murder under the natural and probable consequences doctrine. (*People v. Chiu* (2014) 59 Cal.4th 155.) As Gonzalez recognizes, if the jury was properly instructed, its verdict of first degree murder would conclusively establish that it did not convict Gonzalez under that now-invalid theory of liability. Gonzalez seeks to escape this conclusion by arguing that, taken together, certain instructions, the court's response to jury questions, and the prosecutor's remarks in closing argument erroneously suggested to the jury that it could convict him of first degree murder under the natural and probable consequences doctrine. We reject Gonzalez's arguments.

### 1.    <u>Jury Instructions</u>

Gonzalez first contends that the trial court's instruction on aiding and abetting (CALCRIM No. 400) informed the jury that if

6

Gonzalez aided and abetted another crime it could find him guilty of first degree murder. Gonzalez's argument concerns the final paragraph of CALCRIM No. 400, which stated: "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." This language related to the natural and probable consequences doctrine, but the instruction is of no assistance to Gonzalez because nothing in CALCRIM No. 400 suggested that Gonzalez could be convicted of *first degree* murder based on the theory. CALCRIM No. 400 described the natural and probable consequences doctrine only generally. It did not describe the "specific circumstances" under which a defendant could be found guilty of murder under the theory or instruct on determining the degree of the crime. The trial court provided specific guidance on the natural and probable consequences doctrine in CALCRIM No. 403, which, as we next discuss, clearly indicated that a conviction of natural and probable consequences murder could only be a conviction for murder in the second degree.

Second, Gonzalez contends that language in CALCRIM No. 403, the natural and probable consequences instruction, may have caused jurors to believe that they could convict him of first degree murder under the natural and probable consequences doctrine. CALCRIM No. 403 stated in pertinent part: "If you find the defendant guilty of murder under a natural and probable consequences theory, it is murder of the second degree. If, however, you unanimously find the defendant guilty of murder under *a different theory of liability*, then you must decide the degree of murder and need not unanimously agree on the theory." (Italics added.) Gonzalez argues that the second sentence is

7

confusing and could have caused the jury to believe that it could convict him of first degree murder if some of the jurors found that he was guilty of murder under the natural and probable consequences doctrine and others found him guilty under a malice theory.

We disagree. The first sentence of CALCRIM No. 403 clearly stated that if the jury found Gonzalez guilty under the natural and probable consequences doctrine, he was guilty of second degree murder. The second sentence then explained that if the jury found Gonzalez guilty under a *different theory* than the natural and probable consequences doctrine—i.e. as either the perpetrator or a direct aider and abettor who acted with malice— it did not need to agree regarding which of those two theories applied. This was a correct statement of the law. (See *People v. McCoy* (2001) 25 Cal.4th 1111, 1120 ["the aider and abettor doctrine . . . obviates the necessity to decide who was the aider and abettor and who the direct perpetrator or to what extent each played which role"].) The instruction did not permit the jury to find Gonzales guilty of first degree murder unless the jurors unanimously agreed that he committed murder in the first degree, which the jurors could not do if even a single juror found that Gonzalez was guilty of natural and probable consequences murder, as that theory could only result in a conviction of second degree murder.

Third, Gonzalez complains that the trial court gave a version of CALCRIM No. 520 that omitted the sentence in the pattern instruction that states: "If you decide that the defendant committed murder, it is murder of the second degree, unless the People have proved beyond a reasonable doubt that it is murder

8

of the first degree as defined in CALCRIM No. [521]." This contention also lacks merit.

" '[W]here, upon an appeal, the [reviewing] court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and . . . in any subsequent suit for the same cause of action . . . .' " The principle applies to criminal as well as civil matters [citations] . . . .' [Citation.] 'We will apply the law of the case doctrine where the point of law involved . . . was " 'actually presented and determined by the court.' " ' [Citation.]" (*People v. Medrano* (2024) 98 Cal.App.5th 1254, 1262.)

Gonzalez raised this exact issue on direct appeal. (*People v. Gonzalez* (Jan. 20, 2017, B271270 at *7.) The appellate court held that the trial court did not err in omitting the statement from CALCRIM No. 520 because the jury was clearly instructed under CALCRIM No. 521 that "The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder and the murder is second degree murder." (*Ibid*.) The panel's decision is law of the case.

We are not otherwise persuaded by Gonzalez's argument that the passage of Senate Bill No. 1437 constitutes a change in the law that provides an exception to the law of the case doctrine. The changes wrought by Senate Bill No. 1437 invalidated the natural and probable consequences doctrine. Senate Bill No. 1437 did not impact the court's prior determination that the trial court properly instructed the jury on first degree murder—

9

the same issue that Gonzalez asks us to determine here. Gonzalez's contention with respect to CALCRIM No. 520 is a question of law that has already been decided. It is law of the case and cannot provide a basis for Gonzalez's argument here.

## 2. Prosecutor's Comments in Closing Argument

Gonzalez contends that the prosecutor "made problematic arguments during closing concerning what was required for an aiding/abetting theory to get to first degree murder when it insinuated that any degree of involvement could be enough, thus further confusing the issue."

This contention also fails. The question on appeal from the denial of Gonzalez's section 1172.6 petition is not whether the prosecutor made statements that might have confused the jury on *any* point of law, but whether there is a possibility that the prosecutor's statements would have led the jury to believe that it could convict Gonzalez of first degree murder under the natural and probable consequences doctrine.

The prosecutor would have had to argue that Gonzalez could be convicted of first degree murder because he committed assault with force likely to produce great bodily injury, that another participant in the assault committed murder, and that under all of the circumstances, a reasonable person in Gonzalez's position would have known that murder was a natural and probable consequence of the commission of the assault with force likely to produce great bodily injury. The prosecutor would also had to have argued that no subjective mental component was necessary, as "[a]ider and abettor liability under the natural and probable consequences doctrine does not require assistance with

10

or actual knowledge and intent relating to the [murder], nor subjective foreseeability of either [murder] or the perpetrator's state of mind in committing it. (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531 [inquiry is strictly objective and does not depend on defendant's subjective state of mind].) It only requires that under all of the circumstances presented, a reasonable person in the defendant's position would have or should have known that [murder] was a reasonably foreseeable consequence of the act aided and abetted by the defendant. (*Ibid*.)" (*People v. Chiu* (2014) 59 Cal.4th 155, 165–166.)

The first segment of the prosecutor's argument to which Gonzalez objects was made during the prosecutor's discussion of malice murder, which the prosecutor clearly separated from his discussion of the natural and probable consequences doctrine throughout his argument. Gonzalez takes the prosecutor's statements out of context, quoting only the italicized language that follows:

"So if you believe [Gonzalez] is a direct perpetrator, that's first degree murder. *If you believe that one of the other two or three people was the direct perpetrator and [Gonzalez] aided and abetted it because he was in there kicking too, he is an aider and abettor, and that's first degree murder. He is guilty of the same offense as the man who intended to kill him.*

"And then finally, under the natural and probable consequences doctrine, this would mean that all of the people only intended to assault him. And as a natural and probable consequence, they knew that an assault was dangerous to human life

11

and they disregarded, they consciously disregarded that danger and assaulted him anyway and killed him, that's second degree murder.

"So you've got two theories that you can proceed on for first degree murder.  Direct perpetrator or aider and abettor with one of the other guys being the direct perpetrator.

"And then you've got one theory to proceed on, natural and probable consequences, that leads to *second degree murder*."  (Italics added.)

The prosecutor's argument inaccurately suggested that all *malice* murder was murder in the first degree.  The prosecutor also inaccurately stated that a conviction of natural and probable consequences murder required Gonzalez to consciously disregard that his acts were dangerous to human life.  These inaccuracies do not impact the present inquiry, however, because they would not have lead the jury to believe that it could convict Gonzalez of first degree murder under the natural and probable consequences doctrine.  If anything, the prosecutor's misstatements provided Gonzalez additional protection under that theory, because the prosecutor stated that Gonzalez had to be subjectively aware of danger to human life and consciously disregard that knowledge, although the natural and probable consequences doctrine had no subjective component.

Gonzalez also objects to the italicized portion of the prosecutor's later statement in closing argument:

"[Defense] [c]ounsel told you there was no malice aforethought.  No intent to kill.

"I previously told you that he crossed the line when the attack continued after [the victim] went down.  That demonstrates the mental state.

"[The victim] was sittin' on the pavement with his hands like this when the attack commenced.  Punching by three to four guys.  Punching, blows all about the head and the neck.  And then kicking, kicking.  And now he is flat on the ground and it continued.

"And one of the witnesses said [Gonzalez] finished him off.  Somebody else said somebody else finished him off. . . .

"So on the intent issue, if your [(and the gang's)] rule is no punching and kicking after the victim is on the ground, why continue to punch and kick?  That's the intent for first degree murder.

"*And if you buy [Gonzalez's] argument . . . that somebody else killed [the victim] by kicking him, that's aiding and abetting, because he was aiding and abetting the killer.  And he gets first degree murder for that too.*

"*First degree murder if you decide he was the direct perpetrator.  First degree murder if you decide somebody else kicked him and that caused the death and he was aiding and abetting because he was punching the guy.*

"Defendant just admitted that he was involved in the fight.  So we know it was him.

> "Why punch and kick when [the victim] is
> down? Why? Because you crossed the line into
> intent." (Italics added.)

These statements related solely to the prosecutor's theory that Gonzalez acted with malice and was guilty as either the perpetrator or a direct aider and abettor. They do not implicate the natural and probable consequences doctrine. Nothing in either of the prosecutor's foregoing statements suggested that the jury could convict Gonzalez of first degree murder under the natural and probable consequences doctrine rather than a still-valid theory of murder. Gonzalez had the opportunity to raise any challenges regarding confusion between still-valid theories of murder on direct appeal. Those challenges do not provide relief under section 1172.6. (See *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438 [section 1172.6 "does not permit a petitioner to establish eligibility on the basis of alleged trial error"].)

### 3. Trial Court's Response to Jury Questions

Finally, Gonzalez contends that one of the trial court's responses to a jury question may have confused the jury, because the response did not state that if the jury found Gonzalez guilty of murder under the natural and probable consequences doctrine he could only be guilty of second degree murder.

During deliberations, the jury sent the following note to the court:

> "(1) We are asking for further clarification on
> [CALCRIM No.] 520, 'The natural and probable

consequences of the act were dangerous to human life;' along with an example.

"(2) We can't seem to be moving forward deciding between [first] and [second] degree murder."

Gonzalez characterizes the jury's note as "a jury question . . . concerning the NPC doctrine." However, with respect to the jury's first question, CALCRIM No. 520 does not concern the natural and probable consequences doctrine. It describes malice murder.[3] The second part of the jury's question concerned the degree of murder, which was relevant to all three of the prosecution's theories of murder—malice murder, direct aiding and abetting malice murder, and aiding and abetting under the natural and probable consequences doctrine.

The trial court discussed its response with the parties. The court intuited from the jury's note that the jurors unanimously agreed Gonzalez was guilty of murder, but had yet to reach

_____

[3] The jury appears to have been confused regarding implied malice. CALCRIM No. 520 explained the difference between the two forms of malice as follows:

"The defendant acted with *express malice* if he unlawfully intended to kill.

"The defendant acted with *implied malice* if:

"1.  He intentionally committed an act;

"2.  *The natural and probable consequences of the act were dangerous to human life*;

"3.  At the time he acted, he knew his act was dangerous to human life;

"AND

"4.  He deliberately acted with conscious disregard for human life." (Italics added.)

15

agreement with respect to degree. With the agreement of the parties, the court sent the following response:

> "This clarification is in response to your statement which reads, 'we can't seem to be moving forward, deciding between first and second degree murder.' Does this mean that the jury has already made a decision whether or not the defendant is guilty of murder and the only remaining issue is the degree of murder? Please advise."

The jury responded:

> "We all agree at this point that the defendant is guilty of murder. However, whether it is first or second remains to be agreed upon."

The trial court then sent the jury the response that Gonzalez complains of:

> "The court is in receipt of your question, which is attached.
>
> "Instruction [CALCRIM No.] 520 defines murder and its various degrees. Instruction [CALCRIM No.] 521 defines what is required to prove [first] degree murder.
>
> "The natural and probable consequences theory of murder is a theory of criminal liability for murder.

Instruction [CALCRIM No.] 403 defines the natural and probable consequences theory of murder. To prove a defendant is guilty of murder under this theory, the People must prove that the defendant committed an act, and that the natural and probable consequence of the act he intended to commit, is murder. Furthermore, a natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. Refer to instruction [CALCRIM No.] 403 for a full detailed explanation of murder under this theory."

"The court cannot provide examples of murder under the natural and probable consequence theory.

"If the jury requires further assistance in deciding the degree of the crime, please inform the court."

Gonzalez contends that the court's failure to state that natural and probable consequences murder could only be murder in the second degree may have confused the jury as to whether it could convict him of first degree natural and probable consequences murder. The contention lacks merit. The trial court's response did not specify the possible degrees for any of the prosecution's theories of murder. The court referred the jury to the instructions describing each of the theories and stated that CALCRIM No. 521 instructed on the requirements for first degree murder. The court then specifically advised the jury to consult CALCRIM No. 403 regarding the natural and probable

17

consequences theory of murder, which, as we have discussed, clearly states that natural and probable consequences murder may only be in the second degree. The court's response did not introduce any confusion regarding the degree of murder for the various theories.

We affirm the trial court's order. The jury was clearly instructed that it could only convict Gonzalez of first degree murder if he killed the victim willfully, with deliberation and premeditation. It was also clearly instructed that under the natural and probable consequences doctrine it could only convict Gonzalez of murder in the second degree. The prosecutor did not state that the jury could convict Gonzalez of first degree murder under the natural and probable consequences doctrine. Finally, the trial court's responses to the jury's questions did not suggest that the jury could convict Gonzalez of first degree murder under the natural and probable consequences doctrine. The court referred the jury to the specific, legally correct instructions on the degrees of murder to resolve the issue of degree. The jury could not have convicted Gonzalez of murder under the natural and probable consequences doctrine in light of its finding that he committed first degree murder. The court did not err in denying Gonzalez's section 1172.6 petition at the prima facie stage.

## DISPOSITION

We affirm the trial court's order denying Gonzalez's petition for resentencing pursuant to section 1172.6.
NOT TO BE PUBLISHED.

MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


KIM (D.), J.